TEXAS & P. RY. CO. v. GARDNER.

(Circuit Court of Appeals, Fifth Circuit. February 25, 1902.)

No. 1,102.

1. CARRIERS OF PASSENGERS—INJURY OF PASSENGER—PRESUMPTION OF NEGLIGENCE.
    Evidence of a contract of carriage between plaintiff and defendant, and that plaintiff was injured while a passenger under such contract, casts the burden on defendant to show that it and its agents were without fault, or that plaintiff was guilty of contributory negligence.

2. SAME—NEGLIGENT STARTING OF TRAIN.
    It is negligence to start a railroad train from a station while a passenger is actually getting on board, regardless of the length of the stop.

**3.** SAME—CONTRIBUTORY NEGLIGENCE.

In an action against a railroad company to recover for an injury to plaintiff, alleged to have resulted from her being thrown down by the sudden starting of the train while she was going on board, evidence that plaintiff made a misstep is not necessarily even prima facie evidence of negligence, requiring a special instruction to the jury on the subject of contributory negligence.

**4.** APPEAL—REVIEW—REFUSAL TO DIRECT VERDICT.

The refusal of a trial judge to direct a verdict for defendant on the ground that a part of the plaintiff's testimony was improbable is not a ground for reversal of the judgment by an appellate court, the matter being one going to the credibility of the witness, primarily for the jury, and subject to review only by the trial court on a motion for new trial.

In Error to the Circuit Court of the United States for the Northern District of Texas.

T. J. Freeman, for plaintiff in error.

M. L. Crawford, for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

PER CURIAM. This suit was instituted by the defendant in error, Jabe Gardner, to recover damages for injuries suffered by his wife, Amy Gardner, while a passenger on the defendant railway company's cars from Wills Point, Tex., to Dallas, Tex. On the trial Mrs. Gardner testified as follows:

"Am the wife of plaintiff. Live in Van Zandt county, about two miles from Wills Point. About the 3d of October last I purchased a ticket from Wills Point to Dallas. I was to come on the Cannon Ball train. The train was an hour and twenty minutes late. My husband was with me. I started to get on the train. I had four children with me. I got on the platform, and the train started suddenly, and threw me down against the iron railing. There was a gentleman present who helped me up. I had my ribs broken; my teeth broken; two or three teeth broken. Have not had my teeth fixed. They are broken off. Don't know how long train remained at Wills Point. Several parties got on before I did,—from three to five persons,—and they did not wait long enough for me to get on. I got on the west end of the coach, and went across the platform to a coach in front. When I reached Dallas I went to my sister's, Mrs. W. T. Strange. Mr. Strange met me at the depot, and took me home in a hack. I sent for Dr. Moseley. I was at Mr. Strange's house from October 3d to October 13th. I think two ribs were broken. I suffered with these broken ribs and my other injuries. My head and arm was hurt. The car I was on was crowded, but I did not know any one."

On cross-examination:

"I was on platform at depot when train came up. I saw the train porter. He was standing by the steps. My husband helped me put the children on. Several passengers got on ahead of me. Do not know whether any behind me or not. The porter helped me up the steps. I was just getting up on platform when I fell. My ribs and my head struck the iron railing. My ribs, jaw, and teeth struck the railing. I had my baby in my arms. Have not had my teeth examined. Have had no dentist. My teeth bled. I never said a word to the conductor. I did not tell any one till I got to Dallas. Rode all way to Dallas, and did not say anything to any one about it. My teeth were bleeding and my ribs hurting me. I did not tell the conductor nor the porter of my injury. I told no one on the car. When I got to Dallas I went to my sister's. Had a doctor that night, Dr. Moseley. I had Dr. Eagan for my child that was sick. I never said anything to Eagan about my injury. Never had a dentist to look at my teeth. They were broken off pretty close. Can't tell who the gentleman was that helped me. Have never

seen him since. I don't know who sat next me.' I did not discuss my injury with any one. The conductor took up my ticket, but I did not say anything to him. I did not tell him I fell. I was suffering, and my teeth bleeding. I stayed in Dallas till October 13th. When I went home my husband met me at Wills Point, and I went to the wagon and got in it, and went home."

The main contention of the plaintiff in error in this court is that this evidence shows such a very peculiar character of humanity, and a state of facts so contrary to nature and humanity, that the court below should have given the general charge requested in favor of the defendant. There are other assignments of error in regard to special instructions asked and refused, but only one (the second) seems to be insisted upon in this court, and it is as follows:

" 'You are instructed that it is the duty of a passenger to exercise reasonable and ordinary care for his own safety in boarding or alighting from a train, and if you find and believe from the evidence that this plaintiff's wife did not use reasonable and ordinary care for her own safety in boarding the train, and if you further find that defendant was in no way negligent, you will find for the defendant,'—for the reason that the plaintiff's testimony disclosed the fact that the train stopped at the station for at least one and half minutes, and the testimony of the defendant showed that it stopped from two to five minutes, and the plaintiff failed to show by any evidence that the time in which it was at the station was not ample for her to board the train, and it is a fact that common experience teaches that the time was ample for her to have boarded the train had she used care and diligence. Again, the testimony of the plaintiff's witnesses disclosed the fact that after she went upon the platform she made a false step, and if any injury occurred it occurred from her own negligence in her moving across the platform in making the false step."

The reasons here assigned to show why these instructions ought to have been given are not conclusive. Mrs. Gardner was a passenger and entitled to safe carriage, and, when the contract of carriage was proved and the injuries shown, the burden was on the carrier to show that it and its agents were without fault, or, if in fault, to show that the passenger negligently contributed to her own injury. Now, whether the train stopped at the station two or five or ten minutes, it was negligence to start the same while the passenger was actually getting aboard.

It is not, necessarily, even prima facie negligence to make a false or miss step while boarding a train. If a passenger under such circumstances does make a false step, he, and not the carrier, ought to bear the consequent injuries, unless the false step is caused by or through the negligence of the carrier in starting or moving the train. If the false step is not caused by or through starting or moving the train, but the injuries were enhanced through and because the train was improperly started, then the liability of the carrier is a question for the jury.

The propositions of law contained in the requested instruction seem to be correct, and so plain that it is not a violent presumption that in substance they were given to the jury in the general charge, and this presumption is fortified by the fact that the reasons here urged why the instructions should have been given are special, and bear on particular phases of the evidence, and we can safely infer that the same reasons were given to the trial judge. The extraordinary statement

made by Mrs. Gardner in regard to her injuries and its probability in the light of human character were questions for the jury, and subject to no other review than that of the trial judge, who had power to grant a new trial if the extravagance of the case as made by the evidence overtaxed his credulity.

On the face of the record we find no reversible error of law, and the judgment of the circuit court is therefore affirmed.