Andes *v.* Andes, Appellant.

Argued March 16, 1934.

Before Trex-
LER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADTFELD,
PARKER and JAMES, JJ.

*Harris C. Arnold,* and with him *William B. Arnold,*
for appellant.

*Robert Ruppin,* for appellee.

OPINION BY KELLER, J., July 13, 1934:

This was an action of trespass to recover the dam-
ages sustained by plaintiff because of defendant's
interference with the former's rights to water from
a spring. The facts out of which the dispute arose
may be stated as follows: Prior to the acquiring by
plaintiff of any rights in the spring in question, Jacob
M. Andes, the father of plaintiff and uncle of de-
fendant, was the owner of five adjacent tracts of land
in West Earl and Ephrata Townships, Lancaster
County, viz., (1) Tract A, a trapezoidal shaped lot,
containing 21.8 perches of land, on which is a large
spring of water, known as Diamond Spring or Upper
Diamond Spring, being the spring in controversy.
(2) Tract B, adjoining Tract A on its southern par-
allel side, containing 95.4 perches of land, on which

was erected a dwelling house, and two greenhouses. (3) Tract C adjoining Tract B on the south with a public road, leading to Akron, between, containing 1 acre, 150.9 perches of land, without buildings. (4) Tract D, bordering Tract A on the north and west and tract B on the west, containing 2 acres, 89.91 perches. A smaller spring, known as Lower Diamond Spring is located on this tract. Whether there were any buildings on the tract in 1917 or 1919 does not appear. (5) Tract E, bordering tract C on the west and tract D on the west and north, containing over 100 acres. Jacob M. Andes' dwelling house was located on this tract, and also his barn, which was located about 50 feet west of tract C and faced the public road to Akron which lies between B and C.

Jacob M. Andes, while the owner of all these tracts, laid a two-inch pipe, from the large, or Diamond Spring through tract B to tract C, and from there extended it at right angles to his barn and dwelling house on tract E. The pipe, as laid through tract B, went under the two greenhouses and the dwelling house, with a tap or spigot in each greenhouse, a spigot in the cellar of the dwelling house, and a hand pump in the kitchen of the dwelling. On tract C the pipe was connected with two lines of pipe, with three spigots on each line, which were used to water a tobacco-plant garden, 200 x 100 feet. A pipe also led from the smaller or lower Diamond Spring to the pipe leading from tract C to the barn on tract E.

With affairs in this condition, Jacob M. Andes, on July 6, 1917 entered into a written agreement with his nephew, the defendant, Elias E. Andes, who had taken up the business of selling water from the Diamond Spring,—(chiefly in the City of Lancaster)— by which he agreed to sell and furnish the defendant water from the Diamond Springs, as ordered, except on Sundays, for 35 years, at a fixed price per twelve-

gallon can, with a minimum payment each month. This agreement was recorded on July 10, 1917.

On August 18, 1919, Jacob M. Andes entered into articles of agreement with his son, Franklin S. Andes, the plaintiff, by which he agreed to sell plaintiff tract B, and deliver deed and possession for the same on or before April 1, 1920, for $4,100. The agreement provided that the grantee should have the privilege of using the water from a spring on the *northwest*, [north] which was piped through said premises to and beyond the road on the south, at a rental of $6 per year. The grantor reserved the right to enter the premises to make repairs to this water pipe.

On December 19, 1919 Jacob M. Andes, by written agreement under seal, leased tract A, on which the Diamond Spring was located, to the defendant, Elias E. Andes, for the term of fifty years beginning April 1, 1920, for the monthly rental of $5 a month. The lease, in describing the land demised, bounded it on the south "by the premises sold and to be conveyed to Frank Andes"—[thus putting him on notice of the latter's rights under the sale to him. See Detwiler v. Coldren, 101 Pa. Superior Ct. 189, 193]—and on the west and north by land "to be granted to Elias Andes," the lessee,—that is, tract D. It contained the following specific rights or privileges: "The lessee is hereby privileged to use all the water needed for his trade in the City of Lancaster and to connect water pipes with the pipe laid from the spring through the premises of land to be conveyed to Frank Andes, so lessee can convey the water of the said Diamond Spring to his premises the same to be used for shipping water to Lancaster as aforesaid. ...... Lessor grants the exclusive right to lessee to ship water to Lancaster, barring all other parties from shipping to the city aforesaid. The lessee [is] further privileged to use all the water needed to make soft drinks

or carbonated or distilled waters." This lease was recorded May 14, 1920.

Jacob M. Andes also agreed, whether verbally or in writing does not appear, to sell Elias E. Andes tract D with certain water rights in the Diamond Spring on A and in the Lower Diamond Spring on D.

The two deeds carrying out the above articles and agreements to sell were executed and delivered on March 27, 1920. The one to Frank S. Andes for B was recorded April 22, 1920, and contained the following covenants and conditions: "Under and subject to the right of Elias E. Andes, his heirs and assigns, to enter upon the premises hereby conveyed, to connect and lay, or cause to be connected and laid, a water pipe with the main pipe extending from the Upper Diamond Spring to the barnyard of Jacob M. Andes to convey or carry water from the said spring to the premises of the said Elias E. Andes, and to make repairs to said pipes without any hindrance or molestation for a period of fifty years, [thus putting the plaintiff on notice of Elias E. Andes' rights in the spring for fifty years: See Detwiler v. Coldren, supra, p. 193]. Also under and subject to the right of the grantor herein, his heirs and assigns, to enter upon the premises hereby conveyed to repair the water pipes extending from the Upper Diamond Spring to his barnyard [on tract E] without any hindrance or molestation. The grantee, his heirs and assigns, [are] forever privileged to use in common with the grantor herein, his heirs and assigns, water piped from the Upper Diamond Spring through the cellar of the grantee's house, for his or their own personal use, by paying a rental of six dollars per annum for the same."

The one to Elias E. Andes for D was recorded March 29, 1920,—(Deed Book Y, Vol. 23, page 45)—and contained, inter alia, the following covenants and

conditions: "The grantee, his heirs and assigns are privileged to enter upon the premises to be conveyed to Frank S. Andes—[See Detwiler v. Coldren, supra] —to connect and lay, or cause to be connected and laid, a water pipe with the *main water pipe extending from the Upper Diamond Spring to the barnyard of Jacob M. Andes,* the grantor, to convey or carry water from the said spring to the premises hereby conveyed to Elias E. Andes, and to make repairs to said pipes without any hindrance or molestation for a period of fifty years. ...... The grantee, his heirs and assigns, forever privileged to use in common with the grantor herein, his heirs and assigns, the water of the Lower Diamond Spring for his or their own personal use. Reserving out of the premises hereby conveyed a strip of ground 12 ft. in diameter on which is the Lower Diamond Spring, and a strip 4 feet wide and extending from said spring to the public road leading to Akron a distance of 179 feet for making repairs to said spring and pipe line but for no other purpose or purposes."

On February 27, 1928 Jacob M. Andes executed and delivered to his son, the plaintiff, a deed for tracts C and A, "under and subject to any rights that the said Elias E. Andes may have therein by virtue of a certain deed of conveyance from the grantor herein to the said Elias E. Andes, dated March 27, 1920 and recorded in the Recorder's Office in and for the County of Lancaster, Pennsylvania, in Deed Book 'Y', Volume 23, at page 45. And by virtue of any and all other written agreements or a lease or leases between the same parties that may be duly recorded in the Recorder's Office aforesaid. And this conveyance is further made under and subject to the express provision that it shall and do not in any way deprive the grantor herein or any of the property he may own at Diamond Station, of any water rights which said

property or he now enjoy and that he, his heirs and assigns shall be forever privileged to use in common with the said grantee herein, his heirs and assigns, the water of the spring located on purpart No. 2 [tract A] herein, and reserving to himself, his heirs and assigns, the right of inspection and the making of repair to said spring when and as the same may be required. It is further expressly agreed and understood that no water rights pass to the grantee herein as to the water now flowing [from Lower Diamond Spring] into a trough located immediately on the West side of the purpart No. 1, [tract C] and the said Jacob M. Andes for himself, his heirs and assigns does hereby reserve to himself his heirs and assigns free and uninterrupted access to said trough and free and uninterrupted ingress and egress to a lane or driveway adjoining premises No. 1 on the West.'' As the lease to defendant of December 19, 1919 was recorded long before this deed was made, this conveyance was made expressly subject to it.

While not very material, we understand that Jacob M. Andes subsequently conveyed tract E to the defendant Elias E. Andes, thereby passing to him the water rights reserved in the just before mentioned conveyance for the benefit of tract E.

In pursuance of the property and water rights granted or leased to him as aforesaid Elias E. Andes erected on tract D a building which he used and still uses as a bottling works. He installed in it a tank holding about 350 to 400 gallons and from it fills the bottles for his trade. Three pipes run from the spring on tract A to the bottling house; the first over tract B, connecting with the 2-inch pipe installed by Jacob M. Andes as aforesaid and leading from the spring under plaintiff's dwelling house to the barn and house on tract E; the second, a pipe laid directly from the spring, over tract B to the bottling house, at the same

level as the first pipe. Defendant's right to lay and maintain this second pipe was upheld by a decree of the Court of Common Pleas of Lancaster County sitting in equity, unappealed from. In 1927, due to various alleged interferences by plaintiff with these pipes, where they passed over his land, defendant laid a third pipe from the spring to the bottling house, entirely on land leased or owned by him. This pipe entered the spring at the same level as the other pipes, but by an ell went lower than the intake of those pipes, to a point six inches or a foot from the bottom of the spring. An electric pump is attached to this third pipe capable of pumping 420 gallons an hour. In operation the pump is used about fifteen minutes at a time and then shut down for half an hour or longer. It operates about three or four hours daily,—except Sundays,—out of the twenty-four.

After Franklin S. Andes went into possession of tract B under the articles and deed beforementioned he built three more greenhouses which he connected with the pipe running from the Diamond Spring through his land, and enlarged the facilities for using the water in the two original greenhouses. He installed a bathroom in his dwelling and enlarged the other water facilities in his house. After he acquired title to tract C he replaced the old water system there by a sprinkling system and enlarged the garden supplied by the new watering system fifty per cent over that used by Jacob M. Andes—adding a plot 200 feet by 50 feet to the 200 feet by 100 feet plot formerly in use. He turned the tobacco plant garden into a celery patch which is not only half again as large but uses much more water for much longer periods.

Complaining that by the use of defendant's third pipe he had been deprived, in 1930, of water to which he was entitled in his dwelling, greenhouses and celery patch plaintiff brought this action to recover the dam-

174

ages sustained to his crops, etc., giving notice under the Act of May 2, 1876, P. L. 95, that he would claim damages up to the date of trial, and recovered a verdict of $2,100, on which judgment was entered. The appeal is chiefly concerned with the court's rulings on the admission of evidence and the measure of damages.

When Jacob M. Andes made his first agreement with Elias E. Andes relative to the water of Diamond Spring, he was the owner of all the land affected by that agreement. If he saw fit to grant to Elias E. Andes any rights to the water in the spring superior to those retained for himself he had a right to do so. No matter how open and visible an easement on land may be if one person owns both the dominant and servient tenements he can agree that another person shall take and enjoy rights superior to those retained by himself. And one purchasing from him, will take subject to the superior rights of that other person, if he has actual or constructive notice of such grant. When Jacob M. Andes agreed to sell tract B to this plaintiff, as well as when he made and delivered the deed pursuant to said articles, he had already contracted with Elias E. Andes to sell to the latter as much water as he might order to supply his trade, for thirty-five years from July 6, 1917. That agreement was recorded. Franklin S. Andes was bound to take notice of it, and the water rights in Diamond Spring conveyed to him by said articles and deed were subject to Elias E. Andes' rights under said agreement. That the flow of the spring was so great that ordinarily the flowage in the pipe through tract B would not be lessened did not affect the rights passing under the agreement. This agreement, it is true, was superseded by the lease of December 19, 1919, but in so far as the second paper,—the lease—assured or continued to this defendant rights covered by the first agreement, the plaintiff held his water rights in Diamond Spring

subject to them. Hence the agreement of July 6, 1917 was relevant and should have been received in evidence. Plaintiff's objection that the agreement had not been pleaded by defendant overlooked the fact that the action was in trespass, not assumpsit, and that defendant was not obliged to plead anything, and that the only effect of such failure to plead was to admit his responsibility for the placing of the third pipe.

As we read the agreement of July 6, 1917 and the lease of December 19, 1919, in the light of the clauses of plaintiff's deeds, they give to Elias E. Andes, as long as he pays the stipulated price or rental a right to take as much water as he may need for his trade in the City of Lancaster—irrespective of its effect on Jacob M. Andes' other property or on the plaintiff as grantee of tract B,—for fifty years from April 1, 1920. His rights to sell water to the trade outside of the City of Lancaster are subject to the easement created by the installation of the 2-inch pipe leading from the spring to the barn and dwelling on tract E, under which the plaintiff has the right to tap the water for use in his dwelling house and his two original greenhouses. The deed to Franklin Andes for tract B clarifies what was intended to be conveyed by the articles of agreement which were never recorded. The grant to him, his heirs and assigns, of the right to use the water piped through his cellar "for his or their own personal use," gave him the right to use the water in his house and in the two greenhouses on the premises, as much as he needed, subject only to the prior and superior right of Elias E. Andes for use in his trade in the City of Lancaster. He—Franklin Andes—had no right to sell any of it, or waste any of it, as defendant claims he did. All of the water in the spring not so used by Franklin S. Andes in and about his dwelling and two greenhouses, and by Jacob M. Andes

on tracts C and E,—whose rights were similar to plaintiff's—, could be sold by Elias E. Andes outside the City of Lancaster.

Plaintiff's rights in the water as respects tract C are somewhat different. He bought that tract and tract A after the lease of December 19, 1919 had been recorded. He took title to the land and the water rights expressly subject to the lease—that is—expressly, not by implication—subject to the rights of Elias E. Andes to use all the water he needed in his trade in the City of Lancaster for fifty years. Subject to that right plaintiff had the right to use the water in the garden in tract C. He could not enlarge the garden watering system to the injury of Jacob M. Andes' (now defendant's) rights to have water from the pipe carried to his watering trough, barn and dwelling, nor to defendant's rights to all the water not legally used under the easement created by Jacob M. Andes.

The conveyance of tract A by Jacob M. Andes to Franklin S. Andes was made expressly subject to defendant's fifty year lease and it carried with it no present right of possession. He acquired thereby no right to the water in the spring until defendant's lease expired, or was terminated. Hence no evidence should have been received as to the value of the water per gallon.

It is probable that this action would not have arisen but for the unprecedented drought of 1930, which dried up many springs and wells in the locality and affected the sources and supply of many others. But this drought did occur and a shortage of water having resulted it is necessary to inquire into the respective rights to the water and their order of priority.

First then, the defendant, Elias E. Andes, had the right to use the water from Diamond Spring—as much

as he needed—to supply his trade in the City of Lancaster.

Secondly, and subject to this, the plaintiff had the right to use the water reasonably—not wastefully—for domestic purposes in the dwelling and in the two greenhouses on tract B, and to water the garden patch 200 x 100 feet, in common and equal right with the owners and occupiers of tract E at the water trough, barn and dwelling.

Thirdly, the defendant could sell in his trade outside the City of Lancaster all the water not so used by plaintiff at his dwelling and two greenhouses, and to water the original garden patch on tract C, and by the owner, or person in possession, of the dwelling and barn on tract E.

Fourthly, plaintiff had no rights, for which he could ask protection in equity or damages at law, to use the water from the Diamond Spring on tract A in the three additional greenhouses which he erected on tract B or to water the extension to the garden on tract C.

The plaintiff did not have the right to use all the water flowing through the two-inch pipe, as contended by his counsel. The pipe was originally laid to convey water to Jacob M. Andes' dwelling house and barn on tract E; and the rights passing to the plaintiff in reference thereto contemplated the reasonable use for domestic and personal purposes as established when tract B was sold to him—or as correctly stated by the court in its answer to defendant's third point: "The plaintiff, Frank Andes is entitled to receive water from Upper Diamond Spring only to the extent and for the purposes for which it was being received by Jacob Andes on the properties now belonging to Frank, at the time the lease of the spring tract was made to Elias."

The difficulty in the case is that while affirming the

178

point the court did not limit the evidence in consonance with it.

The case is complicated by the fact that both plaintiff and defendant went beyond their respective legal rights: The defendant, in that he did not limit his superior rights in the taking of water to his trade in the City of Lancaster; the plaintiff in that he attempted to increase the rights granted to him by adding three more greenhouses and the garden patch extension.

If the defendant had confined the use of the third pipe, which he placed in the spring, to his trade in the City of Lancaster the plaintiff would have had no right of action against him. On the other hand, the evidence in support of the plaintiff's damages was not restricted to his legal rights, but included damages arising from his failure to receive water from the spring for his three additional greenhouses and the extension of his watering system in tract C.

Taking up the concrete questions of evidence: In view of the fact that the defendant, under his superior claim of right, took more water than he was entitled to, to the injury of plaintiff's rights, the latter is entitled to nominal damages at least.

The shortage in the water did not affect the plants growing in the greenhouses, except those which were intended for use as seed. While ordinarily the proper measure of damages for the destruction of a growing crop is the value of the crop in its condition at the time and place of destruction and not the market value at the time of maturity, or during the market season (8 R. C. L. 379; 17 C. J. 887; Taylor v. Canton Twp., 30 Pa. Superior Ct. 305, 310), as the acts here complained of were continuous and affected the plants almost from the time they were planted as seed, we feel that the court committed no error in permitting a recovery of the cost of the seed which was purchased

to take the place of the seed which did not come to maturity. But if the plaintiff adopted this method of fixing his damages, he is restricted to it and cannot also show the value of the plants. He must limit himself to one or the other. This cost should have been restricted to the seed growing in the two greenhouses on tract B when the plaintiff purchased it. The evidence improperly included the seed plants which were planted, and the cost of seed purchased to take the place of seed raised, in the three additional greenhouses.

So too, the damage to the plaintiff's celery crop was improperly increased by the inclusion of the plants grown by the unwarranted extension of the watering system, and an erroneous value was likewise placed on these plants. See the general rule as to growing crops as stated above. The value of 30,000 or 40,000 celery plants in the ground is not measured by the selling price of a single stalk pulled up, washed, prepared for market, and sold at retail; it is represented by the value of all the plants in the ground at the time of the shortage, considered in bulk or at wholesale.

The plaintiff's evidence as to the cost of drilling the two wells on tract B should have been excluded for two reasons, in addition to the unsatisfactory itemization of their cost. In the first place, this suit was brought for temporary damages, not for a permanent taking; while the cost of putting in a water system as a substitute for the water rights affected is one method of arriving at the permanent damages by an unlawful appropriation where such newly installed system is less than the difference in value of plaintiff's land before and after the taking. And secondly, the system was not installed solely for the purpose of supplying water to the dwelling house and two greenhouses for which the plaintiff had a legal right

of supply. It was also used to take water to the three additional greenhouses which had no such right of supply. There is no method of apportioning the cost between these and, therefore, it is not a proper item of damage in this suit.

So too, if the plaintiff's shortage of water was due in part to his improper use of it in the three additional greenhouses and in the extension to the sprinkling system in the garden patch, or to his own waste of the water, he can recover only nominal damages.

We are not to be understood as holding that the plaintiff is restricted to exactly the same facilities which were in use at the time the deed of March 27, 1920 was made to him. He may reasonably enlarge those facilities by installing a bathroom in his house, or by additional taps or spigots in his two greenhouses so long as their use does not unduly and unreasonably affect the water flowing to the dwelling and barn on tract E, but he has no right to add additional units to the buildings or water system already connected with the pipe.

This case is not similar to that of Standard Plate Glass Co. v. Butler Water Co., 5 Pa. Superior Ct. 563, relied on by the appellee and the court below. In that case the water company had no rights to the water other than as a riparian owner and had no right to transport and sell the water to the injury of lower riparian land owners. The water company claimed no rights either by grant or by appropriation under eminent domain. In the present case the defendant has the prior right, by grant, to take and use as much water as may be necessary in his trade with the City of Lancaster; and to dispose of all the water not reasonably used by plaintiff under his grants. And, in the Butler Water Company case the plaintiff was a riparian land owner and was entitled to the flow of all the water except such as prior land owners might

use for domestic purposes. In the present case, the plaintiff is not a riparian land owner; his rights are restricted to the limited use of water supplied by an artificial pipe, which was intended not only for his own supply, but also for the owners and occupiers of tract E; and the owner who created this supply had granted to the defendant a prior and superior right to the use of the water for his trade in the City of Lancaster.

The assignments of error, except the first and ninth, are sustained, to the extent indicated in this opinion. The judgment is reversed and a new trial awarded.