## CHICAGO, R. I. & P. RY. CO. v. TURNER.

No. 22205.    May 22, 1934.

Rehearing Denied June 19, 1934.

W. R. Bleakmore, W. L. Farmer, John Barry, and Robert E. Lee, for plaintiff in error.

Wm. McFadyen, for defendant in error.

OSBORN, J. This action was filed in the district court of Caddo county by Edward Turner against the Chicago, Rock Island & Pacific Railway Company for damages to crops caused by an overflow of water. The cause was tried to a jury, and a verdict was rendered for plaintiff. From judgment thereon, defendant appeals.

Plaintiff alleges in his petition that he is a lessee or tenant of one Dr. A. H. Taylor, the owner of certain land situated one-half mile south of Anadarko, Okla.; that the defendant railway company constructed its track along the east side of said farm and raised an embankment from four to eight feet high upon which to lay its rails; that the natural drainage of water was from the west to the east, and in order to carry the water from plaintiff's farm defendant constructed a drainage ditch on the right of way, which for a number of years carried the water northward and into a creek; but that prior to 1928 the defendant had negligently maintained the ditch and had permitted it to become filled up and had permitted vegetable growth to remain in said ditch to the extent that it was inadequate to carry the natural flow of water away from plaintiff's farm; that in June, 1928, after an unusual rainfall, the water backed up over 45 acres of plaintiff's land and completely destroyed a cotton crop which was growing on said land. The prayer of the petition was for $2,950.

There is but one proposition presented in this appeal, which is as follows:

"The measure of plaintiff's damage, if any, for injury to his growing crops is the difference between the value of said crops at the place immediately before and after the injury. Plaintiff offered no competent testimony to support his alleged loss, and failing to produce testimony supporting that essential element of his cause the court should have sustained defendant's demurrer to the testimony. Having failed to sustain the demurrer to the evidence, the court should have peremptorily instructed the jury to return a verdict for the defendant."

We agree with defendant as to the measure of plaintiff's damages, but an examination of the record discloses that the testimony supports the verdict of the jury in the manner of the computation of the damage in line with the established rule as to the measure of damage in cases of this nature.

In the case of Castle v. Reeburg, 75 Okla. 22, 181 P. 297, it is said:

"In an action for damages for injury to growing crops, caused by damming up a water course, causing the same to overflow upon the land of another, where the evidence discloses that part of the crops were planted and ruined by reason of the overflow, and that thereafter the land was replanted, and the crops cultivated and harvested, the measure of damages plaintiff will be entitled to recover will be the difference between the reasonable market value of the crops which, as shown by the evidence, would have been raised on such land, had not said overflow occurred, and the market value of any crops actually raised thereon."

In the case of DeArman v. Oglesby, 49 Okla. 118, 152 P. 356, it is said:

"In a suit for damages for the destruction of a growing crop, such damages are to be estimated as of the time of the injury, and the measure to be applied is compensation for the value of the crops in the condition in which they were at the time of their destruction.

"In arriving at the value of a growing crop, it is proper to show by evidence the probable yield under proper cultivation, and the value of such probable yield when matured, gathered, prepared and ready for sale; also, the probable cost of proper cultivation necessary to mature the crop, as well as the cost of its gathering, preparation, and transportation to market. The difference between such probable value in the market and cost of finishing the cultivation and gathering, preparing, and transporting to market will ordinarily represent the value at the time of loss with as much certainty as any other method."

See, also, C., R. I. & P. Ry. Co. v. Johnson, 25 Okla. 760, 107 P. 662, 27 L. R. A. (N. S.) 879; Missouri, O. & G. Ry. Co. v. Brown, 41 Okla. 70, 136 P. 1117, 50 L. R. A. (N. S.) 1124; 17 C. J. 887, sec. 190.

The record shows that plaintiff testified as to the cost of preparing the soil for planting, the cost of the seed, and of cultivating the land. He also testified that the cotton was from five to ten inches tall at the time it was destroyed. Plaintiff further testified as to the cost of cultivating the crop until it matured; the cost of picking the cotton and of hauling it to market. Plaintiff also testified to the average yield of cotton on the same quality of land adjacent to his land. Other farmers who lived in his neighborhood corroborated plaintiff in this

regard. Plaintiff also testified that after the crop was destroyed, it was too late to replant the land in cotton, and that he planted feed stuff and harvested and sold feed stuff to the amount of $65 from that portion of the land which was overflowed. None of said testimony was disputed or controverted. The verdict of the jury was for $1,504. The evidence was sufficient to support the verdict and judgment.

The judgment of the trial court is affirmed.

RILEY, C. J., CULLISON, V. C. J., and SWINDALL and ANDREWS, JJ., concur.