## HANKIN v. UNITED STATES.

### No. 2454.

District Court, E. D. Pennsylvania.

Aug. 5, 1943.

Joseph L. Prince, of Pottstown, Pa., for plaintiff.

C. James Todaro, Sp. Asst. to the Atty. Gen., Gerald A. Gleeson, U. S. Atty., of Philadelphia, Pa., and Irwin D. Shapiro, Atty., Department of Justice, of Washington, D. C., for defendant.

BARD, District Judge.

This matter arises on defendant's motion for a new trial in an action by the lessee of a farm property against the United States to recover the value of the wheat growing on the demised property on March 23, 1942, when it was seized by the United States in condemnation proceedings. The action was tried before a jury which rendered a verdict for the plaintiff in the amount of $6,169.37.

There is no challenge of the plaintiff's right to recover damages for the value of the growing crops. The government's motion for new trial alleges that the verdict is excessive, is against the law and the credible evidence, and is based on an erroneous charge as to the measure of damages. I am of the opinion that the evidence produced was entirely sufficient to support the amount of the jury's verdict, and that the sole question for consideration at this time is whether the charge set forth a legally accurate measure of damages.

The measure of damages for the total destruction of growing crops is recognized to be the value of the crops at the time of their destruction. Scanland v. Musgrove, 91 Ill.App. 184; Chicago R. I. & P. Ry. Co. v. Turner, 168 Okl. 465, 33 P.2d 612; Crow v. Davidson, 186 Okl. 84, 96 P.2d 70; Andes v. Andes, 114 Pa.Super. 165, 173 A. 452; San Antonio & A. P. R. Co. v. Kiersey, Tex.Civ.App., 81 S.W. 1045. This value is not measured, however, by the value of the crops, in their then condition, for immediate use. It is determined rather by the value of the probable yield of the crop when matured, gathered, prepared and ready for sale, less the expenses of cultivation until maturity, gathering, preparing and transporting it to the market. In Chicago R. I. & P. Ry. Co. v. Turner, 168 Okl. at page 466, 33 P.2d at page 613, supra, the court, quoting from De Arman v. Oglesby, 49 Okl. 118, 152 P. 356, said:

"In a suit for damages for the destruction of a growing crop, such damages are to be estimated as of the time of the injury, and the measure to be applied is compensation for the value of the crops in the

condition in which they were at the time of their destruction.

"In arriving at the value of a growing crop, it is proper to show by evidence the probable yield under proper cultivation, and the value of such probable yield when matured, gathered, prepared, and ready for sale; also the probable cost of proper cultivation necessary to mature the crop, as well as the cost of its gathering, preparation, and transportation to market. The difference between such probable value in the market and the cost of the finishing of the cultivation, and gathering, preparing, and transporting to market will ordinarily represent the value at the time of loss with as much certainty as any other method."

In Scanland v. Musgrove, supra, the court, holding that plaintiff was entitled to the value of his crop of growing wheat at the time of its destruction, defined such value, 91 Ill.App. at page 186, as being "not its then value for immediate use, in the condition it then was, but with a view to his right to use the land until it was matured, and then harvest it; and this value may be properly ascertained by showing the probable amount of wheat the crop, as it appeared when destroyed, would likely yield; the value of the same at the market season, and deducting therefrom the necessary cost for harvesting and threshing the same."

In United Verde Copper Co. v. Ralston, 46 F.2d 1, at page 2, the Circuit Court of Appeals for the Ninth Circuit stated the rule as follows: "The measure of damages for loss of a growing crop where there appears to be a reasonable certainty that it would have matured * * * is to allow for the value of the probable yield under proper cultivation when matured and ready for market, less the estimated expense of producing, harvesting, and marketing. Teller v. Bay & River Dredging Co., 151 Cal. 209, 90 P. 942, 12 L.R.A.,N.S., 267, 12 Ann. Cas. 779; Candler v. Washoe Lake Reservoir, etc., Co., 28 Nev. 151, 80 P. 751, 6 Ann.Cas. 946; Smith v. Hicks, 14 N.M. 560, 98 P. 138, 19 L.R.A.,N.S., 938; Bader v. Mills & Baker Co., 28 Wyo. 191, 201 P. 1012; Shotwell v. Dodge, 8 Wash. 337, 36 P. 254."

Numerous other authorities on this question are collected in an annotation in 27 L. R.A.,N.S., 170.

■ It is therefore clear that under the authorities the evidence of the probable yield of plaintiff's crop, of the market value thereof, and of the cost of harvesting it and bringing it to market was properly submitted to the jury. There was, however, presented in this case a somewhat unusual situation which gave rise to a question which does not appear to have been specifically adjudicated in any of the cases cited by the parties. The evidence in the present case shows that in Montgomery County, Pennsylvania, where plaintiff's farm was located, it has been the practice of farmers generally and for many years not to sell their wheat immediately upon harvest in July or August. On the contrary, the testimony clearly showed that their practice was to hold the harvested wheat and not sell it until the following January. For this there were two reasons: First, to have some wheat available for seed purposes in the fall; and second, because the market invariably yielded higher prices in January than in August. In view of this evidence, I admitted testimony, over the defendant's objection, of the value of wheat in January of 1943 in the market where plaintiff's wheat would in all likelihood have been sold, and charged the jury that they might consider such market value in computing the damage to which plaintiff was entitled. The government strenuously contends that this was error and that no evidence should have been permitted of the market value of the wheat beyond the period immediately after it would have been harvested. The government argues that to permit the jury to consider testimony as to the market value of the crop at a period six months after harvest is to allow the plaintiff to realize values incidental to his holding the crop for speculation in the hope of a higher price.

■ I am not convinced that I erred in the admission of this evidence or in my charge permitting the jury to consider it. I charged the jury: "In growing and unmatured crops, the measure of damages is the value at the market season of the crops which would have been lost, less the cost of harvesting and transportation." The customary market season in that community was January. The object of damages is to compensate an injured party for the loss he has sustained. If, as the testimony indicated, the general custom of the farmers in this vicinity was to market their wheat six months after the harvest rather than immediately thereafter, and it appears that is the time plaintiff would have sold his crop if the farm had not been seized and

the crop destroyed by the government, the plaintiff would not be fairly compensated for his loss if no consideration could be given to the market value of wheat at the time and place he would have sold his crop. In view of the evidence of the customary January marketing season for wheat in the vicinity of plaintiff's farm, I am of the opinion that the jury was properly permitted to consider the market value at that time as well as at the time of the harvest.

Motion for new trial denied.