## Balliet v. Kaschak et ux.

*John L. Bigelow* and *Johnston & Pope*, for plaintiff.
*Conrad A. Falvello*, for defendants.

PINOLA, J., March 31, 1954.—Plaintiff seeks to enjoin defendants from interfering with her access to and use of certain farm land situate in Butler Township, Luzerne County. Defendants, claiming to own the farm, posted it with "No Trespass" signs and erected barriers preventing plaintiff and her employes from entering upon one of its fields.

*Statement of Pleadings and Issues Raised*

To the amended complaint defendants filed an answer, including new matter. Whereupon plaintiff filed a reply.

A preliminary injunction was granted, following which a final hearing was held. After argument, the court of its own motion reopened the case for further testimony in connection with damages.

The issues raised are:

(a) Do defendants own any part of the property which they posted and barricaded?

(b) If not, what damages did plaintiff suffer as the result of being excluded therefrom by defendants?

From the testimony and exhibits, we make the following

*Findings of Fact*

1. Plaintiff is the owner of a parcel of land in Butler Township bounded and described as follows, to wit:

"Beginning at a stone corner in a public road; thence by lands of Jacob Santee, North seventy-six degrees East, forty-nine and forty-eight hundredths perches to a corner of a cross road; thence by a public road leading to Hazleton, South five degrees and fifteen minutes West, six and twenty-eight hundredths perches to a corner; thence along said Hazleton road, by lands of said Jacob Santee, South fifty-six degrees and forty-five minutes West, thirty-seven and sixty-two hundredths perches to a corner; thence on and along a road lately laid out, North seventy-eight degrees and fifty-five minutes West, fourteen and forty-one hundredths perches to a corner; thence by said Jacob Santee's land, North nine degrees and thirty minutes West, twelve and three-tenths perches to the place of beginning.

"Containing three acres and one hundred and forty-nine perches, more or less."

Excepting therefrom two smaller parcels, to wit:

"(a) Land described in deed from Harrison House-knecht to the Wilkes-Barre and Hazleton Railway, recorded in Deed Book 407, page 39, (1901), now part of the abandoned right-of-way, which land is about sixty (60) feet in width and extends throughout the length of the above land; and,

"(b) Lot described in deed from Jacob Santee to Pardee Brothers & Company, recorded in Deed Book 465, page 367, (1909), which lot is approximately one hundred and twenty-five (125) feet in width and extends in a northwesterly direction across the above land."

Plaintiff occupies a dwelling located on the property and uses the land for farm purposes.

2. Prior to June 1, 1887, the above-described premises were part of a larger tract of land owned by Jacob Santee.

3. On June 1, 1887, Jacob Santee by deed recorded in the Office for the Recording of Deeds in and for Luzerne County, in deed book no. 327, page 608, conveyed the premises above-described to Harrison Houseknecht.

4. On June 13, 1919, the above-described premises were conveyed to plaintiff and John C. Balliet, her husband, by deed of the heirs of Harrison House-knecht, recorded in Luzerne County in deed book 528, page 432.

5. John C. Balliet died May 21, 1948, thereby vesting the entire title to said premises in plaintiff, Jennie V. Balliet.

6. Plaintiff's premises are bounded on the south by a public road leading from Fritzingertown to Hazleton, now known as the "Old Hazleton Highway".

7. Leading from this public road into the farm and wholly upon land of plaintiff, there is a private road, which is the means of entry into what is known as

the south field of the farm. It is bordered on the north by the abandoned railway right-of-way and on the east by a clover field.

8. At the intersection of the private road and the public road, defendants erected or caused to be erected, on or about July 28, 1953, a barrier or blockade on plaintiff's land, across the entrance to the private road, thus preventing access to the private road and the south field of plaintiff; they also posted or caused to be posted a sign thereon warning all persons of trespassing, said sign purporting to be signed by defendant, Peter J. Kaschak.

9. The premises owned by plaintiff are bounded on the south by an abandoned road.

10. Defendants placed a barrier across the abandoned road at the southeastern end of plaintiff's property and also at the southwestern end where the same formerly intersected the "Old Hazleton Highway".

11. This interference by defendants with plaintiff's rights of access to her field has caused her serious harm, in that she was unable to use this field for farming purposes for which it was intended and was unable to properly tend to crops which had already been planted in the field.

12. By reason of the inability of plaintiff to properly tend the crops planted by her, as the result of the interference of defendants, plaintiff has suffered damages in the amount of $348.62.

13. One of the defendants, Peter J. Kaschak, threatened to do bodily harm to plaintiff, members of her family and employes.

### Discussion

Defendants had purchased a property adjoining that of plaintiff. The description included a very large tract of land subject, however, to 15 exceptions. Plaintiff's property was erroneously omitted from the list of ex-

ceptions. This omission led defendants to believe that they owned the property occupied by plaintiff. Thereupon they posted part of the farm and prevented plaintiff from using it. A preliminary injunction was granted by the court restraining interference. Whereupon the barriers were removed.

There is no doubt as to the title of plaintiff to the land which defendants posted and from which they sought to keep plaintiff, members of her family and employes.

We interrupted the hearing and went to view the premises. There we compared the maps in the presence of both engineers, John J. DePierro for plaintiff, and Anthony Reese for defendants. It was obvious and all agreed that the land which had been posted and barricaded belonged to plaintiff. It further appeared from the testimony that defendant's engineer, Mr. Reese, had discovered the omission of the exception of plaintiff's property from defendants' deed in 1948 and at that time he told defendants that they had no title to any of the property described in plaintiff's deed.

The obstruction was erected on or about July 28, 1953, and was not removed until September 17, 1953. In the meantime plaintiff was prevented from properly caring for the crops which had been planted in that part of the farm. She was prevented from dusting them with insecticides, from harrowing and otherwise cultivating the land, with the result that she obtained crops which were less in quantity and inferior in quality than she would have obtained had she been able to properly care for them.

Her witnesses testified to the amounts received from the sale of the crops and the amounts that she would have received had they been properly cared for.

At argument there developed a difference of opinion as to the proper measure of damages. Counsel for defendants contended that plaintiff could recover only

the value of the crops as they existed on the date when the barriers were erected. Counsel for plaintiff contended that she was entitled to recover the difference between the value of the crops when they would have fully matured following proper care and the value of the crops as actually matured.

Generally the measure of damages for the destruction of a growing crop is the value of the crop in its condition at the time and place of destruction and not the market value at the time of maturity: Andes v. Andes, 114 Pa. Superior Ct. 165, 178; Taylor v. Canton Township, 30 Pa. Superior Ct. 305; Chesney v. Lehigh Valley Coal Company, 12 D. & C. 722.

However, in determining the value of a growing crop at the time and place of its destruction, one court has declared:

"The basis of compensation is the value of the unmatured crop at the time it is destroyed. But since it is not customary to buy or sell growing crops as such, no effective market value, in this sense, ordinarily exists. The formula adopted has been to take evidence on the probable yield and value of the crop when harvested at maturity and the cost of further care and cultivation, harvesting and marketing the crop, in order to determine the actual realizable value of the crop when destroyed; or what the crop when harvested would have brought, less the prospective cost of cultivation, harvesting and marketing." United States v. 576,734 acres of land more or less in Montgomery County, Pa. C. C. A. 3rd, 143 F. 2d 408.

In 175 A. L. R. 196, we find the following annotations:

"Since 'crops growing rarely have any market value' it may be necessary, in arriving at the value of an injured crop, to make appropriate deductions from the market value which the probable crop would have had at maturity had it not been injured." United States

Smelting Co. v. Sisam (1911, C. C. A. 8th Utah) 191 F. 293.

"The most generally approved method of ascertaining the damages for crop injury, under the prevailing rule that the measure of damages is the difference between the value of the crop immediately before and immediately after the injury, is to take the value at maturity which the probable crop would have had but for the injury, deduct the value which the injured crop actually had at maturity, and deduct further any reduction in amount and value of labor and expense attributable to the reduced yield. The statement of that method as found in the cases is sometimes defective or incomplete, yet there is usually little doubt as to the principle approved. . . ."

Finally, where the crop has been affected, as here, by a continuing trespass, the controlling principle is stated in 25 C. J. S. 613, §85:

"Where a crop is injured, from time to time throughout its growing season until its maturity, but is not destroyed, so that it is cultivated throughout the season, harvested and marketed, the damage may be measured by the difference between the value at maturity of the probable crop if there had been no injury and the value of the actual crop at that time, less the expense of fitting for market that portion of the probable crop which was prevented from maturing by the injury."

In order that justice might be done, we reopened the case to take testimony as to what it would have cost for labor and materials to care for the crops during the period when plaintiff was prevented from looking after them.

Counsel for defendants objected to our action. There is no merit to that objection. Where the judge himself upon or after the hearing entertains a doubt or when some additional fact or inquiry is indispensable to enable him to make a satisfactory decree, he may reopen

the case to take further testimony: 30 C. J. S. §855, note 12; Kirschbaum v. Kirschbaum, 92 N. J. Eq. 7, 111 Atl. 697. This he could do, in his discretion, even after decree nisi on final hearing: Fell v. Pitts, 263 Pa. 314, 321; Witman v. Webner, 35 Berks 164.

Some reference was made by counsel for defendants to the fact that plaintiff does not own that portion of the farm formerly used as a right-of-way by the railway nor the part deeded to Pardee Brothers. Apparently this question was raised in an effort to deny plaintiff the right to damages for any crops grown on those parcels of land.

We have examined the records and we find that the deed to plaintiff expressly excepts therefrom the right-of-way of the Wilkes-Barre and Hazleton Railway.

We also find that exception (b) in finding of fact no. 1 is not part of the property described in plaintiff's deed. Harrison Houseknecht, the then owner, did convey a piece of land to the Pardee Brothers. It is described in deed book 465, page 368, and conveys a much smaller piece of land than that described in exception (b). When, in 1919, the heirs of Harrison Houseknecht conveyed to plaintiff and her husband, they failed to except therefrom the part which had been sold to Pardee Brothers.

These errors in the testimony do not, however, require us to reopen the case to correct them because of our conclusions. As a matter of fact, the right-of-way is the north boundary of the south field and no crops were grown thereon. As for the lot deeded to the Pardees, regardless of the correctness of the description, plaintiff is in peaceable possession of it and therefore she has good title as against all the world for every purpose until a superior title is shown, and such possession is prima facie evidence of title against a mere intruder: 1 Thompson on Real Property 46, sec.

44; Chism et al. v. Majors, 92 Okla. 45, 217 Pac. 465 (1923).

In an action for injuries to real property, proof of possession by plaintiff at the time the cause of action accrued is sufficient to show prima facie ownership: Sloss-Sheffield Steel & Iron Co. et al. v. Wilkes et al., 231 Ala. 511, 165 So. 764 (1936).

From the facts found, we reach the following

### Conclusions of Law

1. Plaintiff is the owner of the property described in finding of fact no. 1 and she is in lawful and peaceable possession of the excepted parts thereof.

2. Defendants are illegally preventing plaintiff from having access to various parts of her property and they are likewise acting illegally when posting "No Trespass" signs upon that property.

3. Plaintiff is entitled to recover from defendant's the sum of $348.62 as damages.

In accordance with the findings of fact and conclusions of law, we enter the following

### Decree Nisi

And now, March 31, 1954, at 2 p.m., upon consideration of the foregoing case, it is ordered, adjudged and decreed as follows:

1. That a perpetual injunction issue restraining defendants from interfering with plaintiff, her agents or employes, in going to and from any of the premises described in finding of fact no. 1, also from posting any of this property with "No Trespass" signs, also from threatening or injuring plaintiff, members of her family or employes, also from barricading entrances to plaintiff's lands and also from interfering with plaintiff's use of her property in any manner.

2. Defendants shall pay to the plaintiff the sum of $348.62 for damages suffered by her as a result of the illegal acts of defendants.

3. Defendants shall pay the costs of these proceedings.

Prothonotary shall give prompt notice to the parties of the filing of this adjudication.