## ST. LOUIS & S. F. R. CO. v. WALKER.

No. 1055. Opinion Filed March 12, 1912.

(122 Pac. 492.)

1.  **CARRIERS—Injuries to Passengers—Question for Jury.** Where there was evidence tending to establish that plaintiff, who had gone to the depot of the railway company and purchased a ticket, for the purpose of embarking upon one of its passenger trains, and who, after purchasing the ticket, went out upon the platform to watch for the train, and upon arrival of the train went up where the people were getting on and off, when he heard the conductor call, "All aboard!" turned and caught with his hands the iron rods of the train about its entrance, for the purpose of getting on, and, as he did so, the train moved up with a sudden jerk, jerking loose one of his hands with considerable force and throwing him around against the train, and that by the sudden jerk, and by striking him against the side of the car, he was hurt across the breast and received other injuries, it was not error for the court to submit to the jury for its determination, under proper instructions, whether the accident was caused by the negligence of the railway company.

2.  **TRIAL—Instructions—Requests—Instructions Already Given.** It is not error to refuse to give an instruction that correctly states the law, if substantially the same instruction is embodied in the

charge of the court to the jury, and the charge, taken as a whole, correctly states the law applicable to the facts in the case.

3. **WITNESSES—Impeachment—Admissibility of Evidence.** On the trial of a civil action at which the plaintiff testifies as a witness in his own behalf, it is competent for defendant to prove that plaintiff, in furtherance of the identical cause, and for the purpose of prevailing therein, had been guilty of base, dishonorable, or criminal conduct. Such evidence is admissible in behalf of defendant, both to discredit the plaintiff as a witness, and to throw suspicion upon the justice of his cause of action.

4. **TRIAL—Reception of Evidence—Offer After Objection Sustained.** Where the purpose of a question objected to and the nature of the expected answer thereto is evident, specific offers of proof are not required to entitle the party to a review of a ruling sustaining an objection to the question, if an exception thereto has been duly saved.

(Syllabus by the Court.)

*Error from Pontotoc County Court;*
*Joel Terrell, Judge.*

Action by W. U. Walker against the St. Louis & San Francisco Railroad Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

*W. F. Evans, R. A. Kleinschmidt,* and *Fred E. Suits,* for plaintiff in error.

*Duke Stone,* for defendant in error.

HAYES, J. Defendant in error, hereinafter called plaintiff, brought this action in the court below against plaintiff in error, hereinafter called defendant, to recover damages for injuries alleged to have been received by him while he was trying to board one of defendant's passenger trains at the town of Eldorado, in this state.

By two of its assignments, defendant complains of the action of the court in overruling a demurrer to plaintiff's evidence and a motion to direct a verdict for defendant. Counsel for defendant have treated these two assignments as presenting the same question or proposition, and we shall so consider them.

Plaintiff testified in his own behalf that on the 18th day of January, 1908, in company with one Brenlee, he went early in the morning to defendant's station in the town of Eldorado, for the

purpose of embarking upon its passenger train to Chickasha, which arrived at Eldorado between 7 and 8 o'clock. He testified that he and Mr. Brenlee, on arriving at the station, went to the ticket office, where Mr. Brenlee purchased for him a ticket to Chickasha, which Brenlee thereupon gave to him, and also a sum of money; that they then went out upon the platform, looking for the train, and within two or three minutes thereafter the train arrived; that as soon as it arrived he went up to the train where the people were getting on and off the train; that he heard the conductor call, "All aboard!" and he turned and caught the train to get on; that he caught with his hands on the iron rods of the train about the entrance; that as he did so the train moved up with a sudden jerk, jerking loose his left hand with considerable force, and throwing him around against the train, but that he swung onto the train until it moved ten or fifteen feet, when he caught the bottom step with his right foot, and got back on the train. He testifies that by the sudden jerk, and by striking him against the car, he was hurt across the breast, through his shoulders, and in his back.

It is not important to summarize here the evidence relative to the extent of his injuries and the duration thereof. Plaintiff's testimony as to how the accident occurred is, in some of the substantial parts, corroborated by Mr. Brenlee, who accompanied him to the station. On the other hand, there is evidence of the conductor in charge of the train and of one Mr. Wilson, city marshal of Eldorado, a disinterested witness, to the effect that such accident did not occur; but the credibility of the witnesses cannot be determined. nor the weight of the conflicting evidence weighed by this court in this proceeding. The question presented by plaintiff in error's assignments is: Does the foregoing evidence in behalf of plaintiff state facts sufficient to send the case to the jury for the jury to determine whether the accident, if any, was caused by the negligence of defendant?

We think the trial court committed no error in sending the case to the jury. It is well-settled law that a carrier of passengers, in stopping its trains at stations for the purpose of taking on or letting off passengers, is under duty to hold the train a reason-

able length of time to allow passengers to board or alight with safety. *Choctaw, O. & G. R. Co. v. Burgess et al.*, 21 Okla. 653, 97 Pac. 271. Whether the carrier in the instant case held its train a sufficient length of time, and whether starting the train at the time it did with a sudden jerk and lurch, was negligence on its part was, under the facts, a question for the jury. There is evidence tending to show that the plaintiff did not promptly and immediately board the train after its stopping at the station; but his testimony, however, tends to show that he walked immediately to the entrance of the train, where the passengers were getting on and off, and there stopped, and promptly upon the conductor's calling, "All aboard!" he attempted to board the train; that other passengers got on after him. The call of "All aboard!" given by the conductor, was an invitation to those passengers about the train fixing to embark upon it to board it; that the train would soon depart. After such call, it was the duty of the conductor and of the employees of the carrier in charge of the train to allow a reasonable length of time for those acting upon its invitation to board the train; and that the train be not suddenly moved or jerked, so as to endanger those who attempted immediately to board it. *Hall v. McFadden*, 19 N. B. 340; *Montgomery & E. Ry. Co. v. Stewart*, 91 Ala. 421, 8 South. 708; *Lent v. N. Y. Cen. & C. Ry. Co.*, 120 N. Y. 467, 24 N. E. 653. Such call of the conductor is one of daily occurrence upon all railways, and is acted upon by the traveling public as both a warning that the train will soon depart and an implied invitation to passengers preparing or waiting to board the train to do so, and that they should act promptly. Defendant's conductor, upon being asked what was meant by this signal, answered:

"To notify the people that we are ready to go. Those reubens run, jumping on, when you hallo, 'All aboard!' It means for the passengers to get on; that I am getting ready to go. I never start until I see all on."

The court refused to give the following instruction requested by defendant:

"You are instructed, if the defendant's train stopped a sufficient length of time to board the train, then your verdict should be for the defendant."

This instruction correctly states the law; but in the general charge of the court an instruction was given, by which plaintiff's right to recover was made to depend upon the existence of the fact that his injury was received while, in a reasonable way, and without any negligence on his part, he was attempting to board defendant's train, and that the accident was caused on account of the train's being started before it had been stopped a reasonable length of time and in such manner as would prevent the plaintiff from boarding the train in safety. We think the rule of law applicable to the facts in this case is stated with sufficient clearness in the charge given by the court for the jury not to have been mislead, and substantially the equivalent of the instruction refused was embodied in the charge. For which reason, the refusal of the instruction, although it correctly states the law, is not reversible error. *Finch et al. v. Brown et al.,* 27 Okla. 217, 111 Pac. 391; *Ellet-Kendall Shoe Co. v. Ross et al.,* 28 Okla. 697, 115 Pac. 802; *Citizens' Bank of Wakita v. Garnett,* 21 Okla. 200, 95 Pac. 755.

By another assignment, defendant complains of the rejection of certain testimony. Plaintiff, on cross-examination, was asked if, on the day about one month after the accident, he went to the barn of one Mr. Houser in the town of Ada, in which town both plaintiff and said Houser lived, and there had a conversation with him. This question plaintiff answered in the affirmative. Thereupon he was asked the following question:

"Did not you tell Houser that that was all right, and if he would help you out in this case you would give him $50? A. No, sir; I did not speak but a few words. Q. You know that was not mentioned? A. No, sir; I did not offer him any money at all."

Houser, who testified for plaintiff, was later called by defendant, and was asked the following question:

"Tell the jury whether or not Mr. Walker told you, in substance, that he had $50 for you, and he wanted you to treat him right about this case?"

To this question, an objection was sustained. Prior to asking this question, Houser was asked by defendant's counsel if he re-

membered the occasion of plaintiff's coming to his barn about a month after the accident and talking with him, which the witness answered in the affirmative, except he could not say as to the time. Counsel for plaintiff insist that the foregoing question was not competent, first, for the reason that the question and answer of plaintiff were upon a collateral issue; and, secondly, that the question propounded to the witness Houser was not the same question that was propounded to plaintiff. On the authority of both the decided cases and the text-writers, a witness who has testified upon a material issue may be asked, upon cross-examination, whether he has offered to one of the parties to procure testimony for him for pay, or made an agreement or proposition to either party, for a consideration, to suppress testimony, or whether he himself has attempted to buy or bribe other witnesses; that such evidence is not collateral, for it goes directly to the credit of the witness. *Barkly v. Copeland,* 86 Cal. 483, 25 Pac. 1, 405; *Lewis v. Steiger,* 68 Cal. 200, 8 Pac. 884; *Luhrs v. Kelly,* 67 Cal. 289, 7 Pac. 696; *Morgan v. Fress,* 15 Barb. (N. Y.) 352; *McGinnis v. Grant,* 42 Conn. 77; *Folsom v. Brawn,* 5 Foster (25 N. H.) 114; *State v. Downs,* 91 Mo. 19, 3 S. W. 219; 1 Greenleaf on Ev. sec. 462; Wharton on Ev. sec. 547. Such questions may be asked as a predicate for impeaching the witness by the evidence of other witnesses. Whether the question rejected in this case is the same as the question propounded to plaintiff, and whether the impeaching witness qualified as to the time and place of said conversation, is unimportant to decide; for, upon another ground, we think this testimony was competent.

In *Moriarty v. London, Chatham & Dover R. Co.,* 5 L. R. Q. B. Cas. 314, plaintiff sought to recover damages for injury sustained by his wife, owing to the negligence of the railway company. Defendant was permitted to prove by a witness that plaintiff and another person, acting as agent, offered to compensate the witness if he would give evidence as to the accident. Lord Cockburn, C. J., in holding such evidence competent, said:

"I think this rule ought to be discharged, so far as the ground taken that the evidence was improperly admitted. I think it was

rightly admitted. The conduct of a party to a cause may be of the highest importance in determining whether the cause of action in which he is plaintiff, or the ground of defense, if he is defendant, is honest and just, just as it is evidence against a prisoner that he has said one thing at one time and another at another, as showing that the recourse of falsehood leads fairly to an inference of guilt. Anything from which such an inference can be drawn is cogent and important evidence with a view to the issue. So, if you can show that a plaintiff has been suborning false testimony, and has endeavored to have recourse to perjury, it is strong evidence that he knew perfectly well his cause was an unrighteous one. I do not say that it is conclusive; I fully agree that it should be put to the jury, with the intimation that it does not always follow, because a man, not sure he shall be able to succeed by righteous means, has recourse to means of a different character, that that which he desires, namely, the gaining of the victory, is not his due, or that he has not good ground for believing that justice entitles him to it. It does not necessarily follow that he has not a good cause of action, any more than a prisoner's making a false statement to increase his appearance of innocence is necessarily a proof of his guilt; but it is always evidence which ought to be submitted to the consideration of the tribunal which has to judge of the facts; and therefore I think that the evidence was admissible, inasmuch as it went to show that the plaintiff thought he had a bad case."

The doctrine and rule of the foregoing case has been generally approved and followed by the courts of this country.

At paragraph 795, 1 Thompson on Trials, it is said:

"Evidence of attempts by the opposite party, or by one authorized by him, to destroy, fabricate, or suppress evidence may be shown; such acts being in the nature of an admission that the party has no sufficient case, unless aided by suppressing or fabricating evidence."

To the same effect is the holding in the following cases: *Chicago City Ry. Co. v. McMahon*, 103 Ill. 485, 42 Am. Rep. 29; *Winchell et al. v. Edwards et al.*, 57 Ill. 41; *Snell et al. v. Bray*, 56 Wis. 156, 14 N. W. 14; *Martineau v. May*, 18 Wis. 59; *Georgia Railroad & Banking Co. v. Lybrend*, 99 Ga. 421, 27 S. E. 794.

In the last-mentioned case, in the syllabus by the court, it is said:

"On the trial of a civil action, at which the plaintiff testifies as a witness in his own behalf, it is competent for the defendant to prove that the plaintiff, in furtherance of this identical cause, and for the purpose of prevailing therein, had been guilty of base, dishonorable, or criminal conduct. Evidence of this character is admissible in behalf of the defendant, both to discredit the plaintiff as a witness, and to throw suspicion upon the justice of his cause of action."

It is urged by plaintiff's counsel that the evidence rejected does not tend to impute to plaintiff any dishonorable or corrupt conduct. With this contention, we cannot agree. It is true that the question rejected does not show by the conversation attempted to be established that plaintiff proposed in specific terms to bribe the witness to swear falsely for him upon any specific matter touching the case. Houser was a passenger on the train from which plaintiff departed at Eldorado on the morning of the alleged accident, and was also used as a witness by plaintiff to establish the movement of the train at that time. Witness resides in the town of plaintiff's residence. The character of testimony he was capable of giving in the cause was not of an expert nature, or of such a nature as to entitle him to extra compensation therefor. One who willfully suborns perjury would rarely propose to a witness whom he sought to corrupt to pay him so much for false testimony. He would couch his proposition in more diplomatic and tactful language out of fear that so bold a proposal might shock the conscience of his witness, be rejected, and thereby the more greatly expose the offerer of the bribe to prosecution and conviction for his offense. The meaning of the conversation sought to be established that readily suggests itself to one's mind, under the circumstances, is that plaintiff sought by the offer of money to this witness to influence him to testify favorably to his cause. If defendant had been permitted to show this conduct on the part of plaintiff, it cannot be said it would not have had an effect upon the minds of the jurors favorable to defendant; and the importance of this testimony to defendant becomes apparent upon a review of the entire evidence of the case.

The action and course of conduct of plaintiff immediately after the accident and for several days thereafter was of a some-

what extraordinary and unusual nature. He traveled upon the train to Chickasha, and made no mention to the conductor upon the train of the injury he had received; nor to any other person, except to one passenger, whom he could not name. At Chickasha, where he stopped for the night, he purchased a nickel's worth of morphine, which he took and went to a hotel, where he went to bed, because he was suffering; but he made no mention of his injury or of the accident to anyone. After buying a bottle of Peruna, he left next morning in a buggy for the towns of Lindsay and Pauls Valley, driving across country all day long. Upon his arrival at the last-mentioned place, he went to a hotel, secured a room, stating at the time that he was sick, consulted with and called a physician, whom he also informed of being sick and suffering great pain, remained at the hotel for several days, but at no time mentioned to either the hotel keeper or his physician, who made several visits, anything of the accident, or of the injuries he had received therefrom; and the physician who examined him at the time failed to discover any evidence of his injuries, but diagnosed his condition as one of symptoms of pneumonia, and treated him for such disease with favorable results.

Against the testimony was the evidence of plaintiff that the accident occurred, and that the injuries were received as he alleged. The truthfulness of his statements as to the occurrence of the accident and the injuries received therefrom, in the light of his conduct thereafter, was properly a question for the jury (Texas & P. Ry. Co. v. Gardner, 114 Fed. 186, 52 C. C. 142); and, after approval of the verdict by the trial court, it should not be disturbed upon this ground. But, since the establishment of his injuries by this accident was dependent entirely upon plaintiff's testimony, the fact that he offered to influence witnesses to testify in his favor by the offer of money would be a circumstance strongly bearing upon the question of the justness of his claim and of his credibility as a witness; and the rejection of such evidence was prejudicial error.

Counsel for plaintiff has urged that the question presented by the exclusion of the foregoing evidence has not been preserved for review in this court, because no statement was made to the

trial court of the testimony which it was expected would be elicited by the question objected to. In volume 2, Cyc. p. 697, it is said:

"To reserve any question on the ruling of the trial court in excluding testimony, there must be a pertinent question propounded, and, upon objection being made, a statement to the court of the testimony which it is expected will be elicited by the question and an exception taken to the ruling thereon."

The foregoing language, we think, too broadly states the rule; or, if it be taken as stating the general rule, it does not include the exception that, where it is apparent on the face of the question asked the witness what the evidence sought to be introduced is, and that it is material, upon objection being sustained to it and exception thereto saved, the action of the court may be reviewed on appeal. *Mitchell v. Harcourt et al.*, 62 Iowa, 349, 17 N. W. 581; *Town of Londonderry v. Fryor* (Vt.) 79 Atl. 46; *Albertini v. Linden*, 43 Mont. 126, 115 Pac. 31. An exception to the ruling of the trial court in this case was saved.

The judgment of the trial court is reversed, and the cause remanded.

TURNER, C. J., and KANE and DUNN, JJ., concur; WILLIAMS, J., not participating.