## CASTLE v. REEBURGH et al.

No. 9138—Opinion Filed Feb. 18, 1919.

Rehearing Denied May 27, 1919.

(Syllabus by the Court.)

1. **Water and Water Courses—Obstruction —Damage to Crops—Measure.**

In an action for damages for injury to growing crops, caused by damming up a water course, causing the same to overflow upon the land of another, where the evidence discloses that part of the crops were planted and ruined by reason of the overflow, and that thereafter the land was replanted, and the crops cultivated and harvested, the measure of damages plaintiff will be entitled to recover will be the difference between the reasonable market value of the crops which, as shown by the evidence, would have been raised on such land, had not said overflow occurred, and the market value of any crops actually raised thereon.

(a) If no crops were planted, or, if planted, failed to come up, by reason of the overflow, then the plaintiff's recovery will be the reasonable rental value of the land for such year or years.

2. **Same — Surface Waters — Diversion— Rights of Proprietors.**

The common law governing the diversion of surface water, as adopted and applied in this state, has been modified and restricted to this extent, namely: That each proprietor may divert the same, to cast it back or pass it along to the next proprietor, provided he can do so without injury to such adjoining proprietor. Under this rule of law, no one is permitted to sacrifice his neighbor's property in order to protect his own.

3. **Same—Overflow—Injury to Crops—Instruction.**

In an action for damages for injury to growing crops, caused by the damming up of a water course, where the answer is a general denial, and there was some evidence that another branch had overflowed on this land, but no evidence as to the condition of the crops, or the damage done to the crops by said overflow, or what time of year said overflow occurred, under the pleadings and the character of evidence offered, it was not error to refuse an instruction, requested by the defendant, to the effect that the defendant would not be liable for any damage caused by the overflow of any other branch which contributed to said damage. ·

Error from District Court, Greer County; W. C. Crow, Assigned Judge.

Action by S. P. Reeburgh and another against William E. Castle. Verdict and judgment for plaintiffs, and defendant brings error. Affirmed.

S. B. Garrett and Wilkins B. Garrett, for plaintiff in error.·

H. D. Henry, for defendants in error.

McNEILL, J. This was an action commenced in the district court of Greer county by S. P. Reeburgh and William Rimmer against Wiliam E. Castle; the petition alleging that the said William E. Castle had built and constructed a certain ditch and embankment across his land, which was without authority of law, and was unnecessary and without regard to the land of the plaintiff, thereby filling up and stopping the natural water course of said Spring Branch stream, which passed across the surrounding country, adjacent to said land, thereby damming up said water course and causing the water to flow down and across, and spread over and across, 35 acres of land belonging to plaintiff, and there stand and flood the lands of plaintiff; that during the years 1912, 1913, and 1914, William Rimmer was farming the land of Reeburgh, and giving a share of the crop as rent; that the damming up of said water damaged the crops for the years of 1912, 1913, and 1914. Both plaintiffs join in and bring said suit for damages caused said crops. To this petition the defendant filed a general denial. The case was submitted to a jury, and the jury returned a verdict in favor of the plaintiffs. Defendant below appeals from said judgment to this court.

Plaintiff in error alleges 24 separate and distinct assignments of error, but only a few are presented and argued in the brief, and we will content ourselves with passing on only those that are argued. Assignments Nos. 15 and 17 present the question whether the court properly instructed the jury as to the measure of damages. Instruction No. 4, given by the court, was as follows, to wit:

"You are further instructed that, in the

event you find from a preponderance of the evidence that plaintiffs should recover, then you should assess the amount of their recovery as follows, to wit: Where crops are growing on the land, if same were injured or destroyed by overflows caused by the ditch of the defendant, the plaintiffs would be entitled to recover the reasonable market value of the crops, as has been shown by the evidence would have been raised on said lands had said overflow not occurred; less the market value of any crop actually raised thereon; if no crop was planted, or, if planted, failed to come up, and you find from a preponderance of the evidence that such failure was caused by the alleged wrongful action on the part of the defendant, then plaintiffs should recover the reasonable rental value of said land for such year or years."

The evidence tended to show that certain crops were damaged and ruined in the spring by reason of the overflow, and were either drowned out or failed to come up, and the plaintiff thereafter replanted said land; that by reason of the crops being late the yield was not as great as it would have been, had not the overflow killed or injured the first planting. Then there was some evidence that some crops were overflowed, but were not killed, and were cultivated and harvested, but the yield was small, owing to the damage caused by the overflow. Then there was evidence that certain land could not be cultivated, by reason of this overflow, and no crop was raised. This was the evidence as to the character of the damage. This instruction is in exact accord with the holding of this court in other cases. In the case of Missouri, O. & G. Ry. Co. v. Brown, 41 Okla. 70, 136 Pac. 1117, 50 L. R. A. (N. S.) 1124, the court said as follows:

"In arriving at the value of a growing crop, it is proper to show by evidence the probable yield under proper cultivation, and the value of such probable yield when matured, gathered, prepared, and ready for sale; also the probable cost of proper cultivation necessary to mature the crop, as well as the cost of its gathering, preparation, and transportation to market. The difference between such probable value in the market and the cost of finishing the cultivation, and gathering, preparing, and transportation to market, will ordinarily represent the value at the time of loss with as much certainty as any other method."

To the same effect is the case of De Arman v. Oglesby et al., 49 Okla. 118, 152 Pac. 356. We see no error in this instruction, and hold that the measure of damages was properly submitted to the jury.

The next assignments of error argued by plaintiffs in error are assignments Nos. 18, 19, and 20, wherein it is alleged that the court erred in refusing to give instructions Nos. 2, 3, and 4, requested by plaintiff in error. The

court's instructions Nos. 2 and 3 were as follows:

"(2) You are further instructed that if you find from a preponderance of the evidence in this case that the defendant, Castle, by constructing a ditch along the section line, diverted waters which ordinarily flowed in another direction, and if you further find from a preponderance of the evidence that the construction of said ditch had the effect of diverting waters which had theretofore flowed along the course of Spring Branch, if you find that Spring Branch had any definite course or channel prior to such time, and if you further find from a preponderance of the evidence that the diverting of such waters caused the lands of plaintiffs to be overflowed and if you further find from a preponderance of the evidence that such overflow caused a destruction of crops which the defendant Rimmer was attempting to grow upon said lands, then your verdict should be for the plaintiffs for the value of the crops so destroyed and injured, if any, not exceeding the sum of $850.

"(3) You are further instructed that the defendant had a right to protect his own land from being overflowed by surface waters which had not outlet by any defined water course or channel, provided he took such means as would not have the effect of turning such waters upon the lands of the plaintiffs, and if you believe and find from the evidence that the defendant in digging the ditch in question merely did so as a protection against surface waters, and that no defined water course was thereby changed from its original course or channel, then your verdict should be for the defendant, even though you should find that the plaintiffs suffered damage to their crops at such time as there were extraordinary heavy rainfalls in and above the region where plaintiff's lands were situated."

The law applicable to the control and disposition of surface water in the state of Oklahoma has been announced in a number of well-considered cases heretofore decided by the courts. See C., R. I. & P. R. Co. v. Groves, 20 Okla. 101, 93 Pac. 755, 22 L. R. A. (N. S.) 802; Town of Jefferson v. Hicks, 23 Okla. 688, 102 Pac. 79, 24 L. R. A. (N. S.) 214; C., R. I. & P. R. Co. v. Johnson, 25 Okla. 762, 107 Pac. 662, 27 L. R. A. (N. S.) 879; Gulf, Colorado & Santa Fe R. Co. v. Richardson et al., 42 Okla. 457, 141 Pac. 1107. These have held as follows:

"The common law governing the diversion of surface water, as adopted and applied in this state has been modified and restricted to this extent, namely: That each proprietor may divert the same, cast it back, or pass it along to the next proprietor, provided he can do so without injury to such adjoining proprietor. Under this rule of law, no one is permitted to sacrifice his neighbor's property in order to protect his own."

Instruction No. 2 placed the burden upon

the plaintiff to prove every necessary and material allegation required to be proved in an action for damages of this kind. Instruction No. 3, given by the court, does not correctly state the law, but the same was more favorable to the defendant than he was entitled to, and the defendant cannot complain by reason thereof. Every material issue requested by the plaintiff in error in his instructions Nos. 2, 3, and 4 is included in instructions Nos. 2 and 3 given by the court. This court has held that it is not error to refuse instructions covered substantially by instructions given. St. L. & S. F. R. Co. v. Walker, 31 Okla. 494, 122 Pac. 492; Hagerman v. Thatch, 34 Okla. 772, 127 Pac. 254. We think the instructions given cover the law of the case and include the instructions requested by the defendant. No. 3 is objectionable, but in defendant's favor, and he cannot complain. While it is true the court did not instruct the jury as to the definition of surface water, this does not appear to be a question that requires a definition, as the plaintiff's action was based on damming up a water course, and the refusal to define surface water would not be prejudicial.

Assignment of error No. 23 is that the court refused to give instruction No. 7, requested by the plaintiff in error, which is as follows:

"If you find from the evidence that the waters of Salt Fork of Red river, in times of high water, or rises, in said Salt Fork river, overflowed the plaintiff's lands and damaged or contributed to the damage done to the growing crops thereon, then you are instructed that plaintiff is not entitled to recover for any damage to crops caused by overflows of Salt Fork. And if you should further find that, notwithstanding defendant's ditches and dams contributed to overflows of Spring branch which overflowed the plaintiff's lands and crops, still if you find that, had it not been for the overflows of Salt Fork, the overflows of Spring branch would not have been sufficient to damage plaintiff's crops, then you will find for the defendant."

There was some evidence that Salt Fork of Red river had overflowed on this land during the years of 1912, 1913, and 1914, but there was no evidence as to the condition of the crops at the time of this overflow, whether there were crops on the land or not, or how long the overflow stayed on the land, or that said water from Salt Fork contributed to the damage to any crops. The evidence was only to the effect that Salt Fork overflowed two or three times each year, or that they thought it did. There was no evidence that any damage to any of the crops sued for was caused by the overflow of Salt Fork, unless we content ourselves with saying, if a certain piece of land overflowed in a certain

year, that would be sufficient for the jury to say that it would be damage to a certain crop. There was no evidence as to what effect this had on the crop, or the condition of the crop at the time. The evidence was properly introduced, not for the purpose, under the pleading, of an affirmative defense, but for the purpose of showing that the waters from Spring branch had not caused the injury. The instruction given by the court places the burden of proof upon the plaintiff to show, first, that the water was diverted from the said Spring branch, if the jury found that it had any definite course or channel; second, the jury must find from a preponderance of the evidence that the diverting of the water from Spring branch was what caused the water to overflow; third, that such overflow caused the destruction of the crops—the court having placed the burden of all of these issues upon the plaintiff before he was entitled to a recovery. The defendant's answer was a general denial. Not having pleaded any affirmative facts or defense, nor that anything contributed to the damage, then, under the evidence offered on behalf of the defendant, not specific as to any damage that said overflow had caused, or contributed, to said crops, the issue raised by the pleadings and the evidence introduced was not sufficient to warrant such an instruction, and it was not error to refuse the same.

We cannot say, from reading the entire record in this case, that the jury could have been in any way misled by the refusal of the court to give said instructions. The case, we think, was fairly tried. Both sides submitted their evidence. The court instructed the jury as to the law of the case, placing the burden of all issues upon the plaintiffs. There was a question of fact for the jury, the court placing the burden of proving all the material allegations upon the plaintiffs. The question of fact being submitted to the jury, the jury found in favor of the plaintiffs. We see no material error in the record.

The judgment is therefore affirmed.

All the Justices concur.