## GARRETT v. HAWORTH.

No. 27400.　Oct. 25, 1938.

570

Stone, Moon & Stewart and Claude Garrett, for plaintiff in error

Harry G. Davis and Thomas J. Wiley, for defendant in error.

HURST, J. This is an action for damages for the obstruction of what plaintiff contends is a natural water course causing flood water to back up on to his premises. Plaintiff, Mack Haworth, owned a tract of land in the Arkansas river bottom, and leased another tract owned by E. E Pratt, adjoining plaintiff's land on the northeast, which he operated as a farm. The defendant, Sid Garrett, owned a tract of land directly east of the leased premises, separated by a county road running north and south. It was alleged that from time immemorial a natural water course, which drained the surrounding area, extended through plaintiff's land and across his leased premises in an easterly direction onto the land of defendant. At the point where the water course crossed the road, the county had constructed a culvert, and a few yards east of the culvert defendant, on his own land, constructed a dam across the water course.

It was alleged that about the 3rd of March, 1935, a heavy rain occurred and the dam caused the water, which usually ran through the water course onto defendant's land, to back up onto plaintiff's land and destroy his growing crops, and prevent planting others.

Defendant answered, contending that the culvert was insufficient to allow the passage of the flood waters and that the culvert rather than the dam was the cause of the damage. Defendant further contended by way of cross-petition that plaintiff and other nearby landowners constructed a system of ditches and enlarged the natural water course, causing an unnatural flow of water to be cast upon defendant's land destroying his crops, for which he asked damages. The jury returned a verdict for plaintiff in the sum of $1,000, and from the judgment rendered thereon, the defendant brings this appeal.

The first contention is that there is no competent evidence to support the verdict and judgment. Under this contention defendant presents nine propositions, largely in the form of a statement discussing and analyzing the evidence. As we understand defendant's first proposition, it is that there is no natural water course leading onto defendant's land because of the contour of the lands in the community. It is argued that the elevation of plaintiff's land is lower than that of the defendant, and that there is no movement of water onto the land of the defendant, except in heavy rains. Under the next six propositions the defendant sets out the theory advanced as his defense. He argues that plaintiff and his neighbors to the west constructed a ditching system to drain their own land so that in times of heavy rains "excess" quantities of water would be gathered and cast on defendant's land; that the defendant, foreseeing injury to his own land, built the dam to partially protect himself on account of the extraordinary volume of water to be accelerated upon him; and that the ditching system together with the county culvert, and not the dam, caused the injuries complained of. Defendant also contends that plaintiff cannot recover for the reason that "the evidence shows conclusively, by admissions of the plaintiff and his witnesses, facts which constitute contribution or contributory negligence upon the part of Haworth (plaintiff)."

In this case no living stream exists, but the alleged water course is formed from an accumulation of surface water in times of heavy rain. But it is not necessary for plaintiff's recovery that this be a living stream or water course in the strict sense. In Chicago, R. I. & P. Ry. Co. v. Groves (1908) 20 Okla. 101, 93 P. 755, it is pointed out that the narrow definition of water courses as "natural living streams," which appears in some cases, is not an ancient or universal definition, but, on the contrary, water running in a natural or artificial bed is generally regarded as a water course. A water course is there defined as follows:

"Where the natural conformation of the surrounding country necessarily collects

therein so large a body of water, after heavy rain or the melting of large bodies of snow, as to require an outlet to some common reservoir, and where such water is regularly discharged through a well-defined channel which the force of the water has made for itself, and which is the accustomed channel through which it flows or has ever flowed, it constitutes a water course or waterway."

For the obstruction of such a channel to the damage of plaintiff the defendant will be liable. 27 R. C. L. 1100. It follows that if there is any competent evidence to establish such facts, the verdict and judgment regarding the liability of the defendant was proper. The evidence was conflicting on practically every material point. Plaintiff's testimony, however, discloses that during periodical heavy rains, water is regularly discharged from plaintiff's land and flows through a well-defined channel or course across defendant's land, emptying into a creek leading to the Arkansas river. Plaintiff's witnesses testified that this was a natural waterway. Plaintiff introduced evidence to the effect that he constructed no such drainage system on his land as contended by the defendant and that the damage was caused by the erection of the dam. Defendant's argument is based upon evidence introduced in his behalf at the trial and conclusions drawn from the evidence of plaintiff. Perhaps the jury could reasonably have interpreted the evidence as suggested by defendant, but this being a law action, we cannot weigh the evidence, and we think it clear that there is abundant evidence to support the verdict and judgment in favor of plaintiff on the question of liability under the common-law rules regarding the obstruction of water courses. Therefore, the controversy on this appeal narrows to a determination of whether the trial court properly instructed the jury and whether there is sufficient evidence to support the verdict and judgment on the issue of damages. The remaining propositions under the first contention deal with these matters and will be hereinafter discussed.

■ Defendant contends that the court erred in giving to the jury instruction No. 2, by which they were instructed in substance that plaintiff had the right to the unobstructed flow of water in the water course, and that if they found that the dam constructed by defendant did obstruct the natural outlet for said waters so that it would not flow off the land of plaintiff as it would have, had the water course not been obstructed, but that the water so impounded backed up and overflowed plaintiff's

land, then the verdict should be for the plaintiff. It is argued that by this instruction, the defendant is denied the right to make any sort of dam or embankment on his premises to protect them from the "excess" overflow caused by plaintiff's construction of a ditching system on his own land. Defendant relies on Town of Jefferson v. Hicks (1909) 23 Okla. 687, 102 P. 79, and Atchison, T. & S. F. Ry. Co. v. Hadley (1934) 168 Okla. 588, 35 P.2d 463. In Town of Jefferson v. Hicks, supra, it was held that "the owner of lands situated upon a water course may construct an embankment thereon to protect his land from the superabundant water in times of flood; but, in doing so, he must so place the embankment that the natural and probable consequences of the embankment in times of ordinary floods will not be to cause the overflow to erode, destroy, or injure the lands of other proprietors upon the water course." The holding in Atchison, T. & S. F. Ry. Co. v. Hadley, supra, is to the same effect. In each of those cases the plaintiff complained of dykes or embankments constructed along the banks of a stream allegedly for the purpose of protection against extraordinary overflows, but which caused damage to him in times of ordinary floods, and recovery was allowed. We think that the defendant's rights in this regard were amply covered in instruction No 7, which in part provides:

"The jury is instructed that the defendant had the right to construct an embankment or dam upon his lands for the purpose of protecting the same. He had no right, however, in constructing said embankment, to construct the same in such manner as to obstruct the natural flowage of waters which would naturally flow through said water course from waters accumulated in the water shed above said embankment."

No error can be successfully predicated upon the failure of the court to include in a particular instruction all the law applicable to the issues drawn in question by the pleadings and proof, when the alleged defect is sufficiently covered by the instructions taken as a whole. Chitwood v. Palmer (1924) 101 Okla. 300, 225 P. 969.

In this connection defendant argues that "he could not recover on his cross-petition because the court told the jury that he could not build any embankment of any kind so as to retard the water, though it might be the excess and superabundant water precipitated toward and upon the defendant's land by changes made by the plaintiff himself in the natural water course " But in this

**572**

the defendant overlooks instructions Nos. 3, 4, and 5, relating to his theory of the case. By instruction No. 3, the jury was instructed in substance that the duty which plaintiff owed to his adjoining landowners not to change or alter the flow of water so as to cause them damage is a nondelegable duty, and that he cannot escape liability by claiming that the work was done by other parties, so long as he still controlled or acquiesced in it. By instruction No. 4, the court told the jury in substance that the defendant is entitled, as against the plaintiff, to have the natural water course maintained without interference, and to have the water flow in its accustomed course without any interruption that would result in injury to the defendant's land. The jury was further instructed that if they found that plaintiff deepened or enlarged any of the natural depressions or water courses running through plaintiff's land, and if they believed from the evidence that the lands of the defendant received any injuries resulting from such deepening or enlarging, and that such injuries resulted from the change of conditions, then their verdict should be for the defendant. Instruction No. 5 reiterated that it was not necessary that plaintiff do the deepening or enlarging of the ditches himself, but it is sufficient that he consent to or ratify what had been done, and in such event he would be responsible for any damage proximately caused as if he himself had done the work. It is sufficient to say that we think defendant's theory of the case, both as a defense and on his cross-petition, was fairly submitted to the jury.

Defendant contends that the court erred in giving to the jury instruction No. 10. The court there instructed the jury that there was some evidence that certain riparian owners in the watershed area above plaintiff's land had constructed ditches so as to discharge the water upon plaintiff's land with greater celerity. The instruction then provided:

"You are instructed that if you find such to be the facts, the plaintiff had the right, under such circumstances, to clean out, widen or deepen the natural water course on his farm or to construct ditches thereon for the purpose of accelerating the flow of waters so discharged on his lands by the upper riparian owner or owners, across and off of his lands and to cause the discharge of the same into said natural water course before the same reached the lands of lower riparian owners."

The defendant contends that this instruction is in contradiction to the law announced in the cases of Chicago, R. I. & P. Ry. Co. v. Johnson (1910) 25 Okla. 760. 107 P. 662; Gulf, C. & S. F. Ry. Co. v. Richardson (1914) 42 Okla. 457, 141 P. 1107; Castle v. Reeburgh (1919) 75 Okla. 22, 181 P. 297; and Taylor v. Shriver (1921) 82 Okla. 11, 198 P. 329. The rule announced in those cases, which defendant contends is contrary to the instruction above quoted, is in substance this: That at common law surface water was considered as a common enemy and that each proprietor could send it back or pass it on to the next adjoining proprietor without liability, but that now the rule is somewhat modified in that each proprietor may cast it back or pass it along to the next proprietor, providing he can do so without injury to such adjoining proprietor. Defendant also refers to Atchison, T. & S. F. Ry. Co. v. Hadley, supra, as being to the same effect. We recognize the rule that a proprietor cannot collect surface water into an artificial channel and pour it upon the land of another to his injury, or by means of ditches or other artificial means cause the same to flow upon the lands of another where it would not otherwise go to his injury. But those principles do not conflict with the instruction now complained of. We are not dealing with surface water, but rather with water running through a natural water course. The instruction does not authorize the plaintiff to construct artificial ditches and cast the water upon the land of defendant where it would not otherwise go, as asserted by defendant, but it authorizes plaintiff to widen, deepen, or clean out the water course, or construct ditches to accelerate the flow of water across his land and cause it to flow into the natural water course before it leaves his land. The effect of the instruction is well stated in San Gabriel Valley County Club v. Los Angeles County (1920. Cal.) 188 P. 554, wherein it was said:

"But the whole effect of the drains, so far as increasing the volume in the stream is concerned. may be summed up by saying that they add no water to that already in the channel and that which would come to it on the way, but merely serve to pass such waters more completely and more speedily from one point in the channel to another, all entirely above the (defendant's in the instant case) land."

In Burkett v Bayes (1920) 78 Okla. 8. 187 P. 214, it is said that "the rule is well established that the riparian owner may cause the channel of a water course to be changed upon his own premises, providing

he causes the water to be returned into the original water course before it leaves his premises." To the same effect see Stough v. Steelville Electric Light & Power Co. (Mo. App.) 226 S. W. 295. The evidence in this case was conflicting as to the exact nature of the work done on the ditches and water course running through plaintiff's land, but it was uncontradicted that it maintained its original course before it left plaintiff's land and ran onto defendant's land as it was accustomed to go. We think the instruction sufficiently stated the law under these circumstances.

■ Defendant further contends that the court erred in giving instruction No. 9, whereby the jury was told in substance that if they find that the effect of the dam together with the insufficiency of the culvert was to cause the water to back up over plaintiff's land, then both the defendant and the county would be joint trespassers, and this would not relieve the defendant from liability. The defendant argues that the county could not be held liable for its torts and that there can be no joint tort-feasors without joint liability. In support of this argument defendant cites authorities from other jurisdictions to the effect that there cannot be joint tort-feasors without some concert or unity in the wrongdoing These authorities are not in point. We think the rule governing pollution cases is controlling here. The principle is the same. In Northup v Eakes (1918) 72 Okla. 66, 178 P. 266, the rule is stated:

"Where, although concert is lacking, the separate and independent acts or negligence of several combine to produce directly a single injury, each is responsible for the entire result, even though his act or neglect alone might not have caused it."

Where the liability is joint, the fact that one of the wrongdoers (the county here) cannot be held accountable to the injured party and compelled to respond in damages will not operate to exempt the other. 32 C. J. 1136. We conclude, therefore, that the court committed no error in the giving of this instruction.

■ Defendant also contends that the court erred in refusing to give defendant's requested instruction as to the effect of plaintiff's contribution to his injuries. He concedes that in instruction No. 7 the court told the jury that if they found from the evidence that the dam caused the water to back up over plaintiff's land, then their verdict should be for the plaintiff, "unless you further find that the plaintiff contrib- uted to his own damage, if any, sustained." But defendant asserts that he had the right to a clear, positive instruction in this connection. But we think this instruction sufficiently presented defendant's contention in this regard to the jury, and, considered together with instructions 3, 4, and 5, defendant had his theory of the case adequately presented. This court has held that it is not error to refuse instructions covered substantially by instructions given. St. L & S F. Ry. Co. v. Walker (1912) 31 Okla. 494, 122 P. 492; Hagerman v. Thatch (1912) 34 Okla. 772, 127 P. 254. It is not necessary to determine the law regarding the effect of contribution in this case, for if the court erred in submitting such issue to the jury, it was error in favor of defendant, of which he cannot complain.

■ Defendant in conclusion contends that there is no competent evidence upon which the verdict awarding the damages can be sustained. The damages sought to be recovered are based upon the destruction of growing crops and the flooding of part of the land so as to prevent the plaintiff from planting alfalfa and feed crops. In McCormick on Damages, p. 486, the author states that if the invasion merely prevents the plaintiff from planting his land, the measure of damages is not the value of the hoped for crops, but the rental value of the land for the season. He says that for a past and completed invasion causing destruction to a crop which is grown annually, the basis of compensation is the value of the unmatured crop at the time of the invasion This value is determined by evidence of the probable yield and value of the crop, when finally harvested and marketed at maturity, less the cost of further care and cultivation, harvesting, and marketing. The rule in this state, in accord with these general principles, is that the damages for the destruction of growing crops are to be determined by the market value of such crops when matured and ready for market, less the cost of finishing the cultivation, and gathering, preparing, and transportation to market. Chicago, R. I. & P. Ry. Co. v. Johnson, supra; Castle v. Reeburgh, supra. Defendant contends that there is no evidence regarding the cost of cultivation, gathering, and transporting the matured crops to market, and hence there is no evidence from which the jury could properly determine the amount of damages which should be assessed. We will consider separately each of the items for which plaintiff claims compensation.

(a) Plaintiff testified that he had ten acres of alfalfa on his own land, and that five acres were destroyed. His only testimony regarding the amount of damages was that it would have made five tons a year per acre and it would have made $250. There was no evidence as to the expense to plaintiff in bringing the crop to maturity and getting it ready for sale. But we think as to this item the proof was supplied by defendant. In seeking to recover on his cross-petition defendant testified that it cost him $180 to put up 18 acres of alfalfa on the adjoining tract of land, and thus there was evidence from which the jury could arrive at a correct verdict as to this item.

Plaintiff also testified that 30 acres of the land which he leased from E. E. Pratt had been broken for the purpose of raising alfalfa, and that 15 or 16 acres had been flooded. He stated that it would cost him $2 an acre to get it back in shape, or a total of $30, and that he would have made $180 on the alfalfa that he would have raised. There was no other material evidence in this regard. The jury would have been justified in repaying plaintiff for his labor in breaking the land, but there was no competent evidence as to the alfalfa that he intended to raise. The proper measure of damages in such case is the rental value of the land. Castle v. Reeburgh, supra.

(b) Plaintiff testified that five acres of growing radishes were destroyed and that he "lost about $411.70." He also testified that five acres of cabbage were destroyed and he estimated his loss at $311.75. He further testified that ten acres of spinach was practically all lost and that he would have made $200. There was no evidence as to the cost of cultivating, transporting, or marketing these crops, and for that reason there was no evidence from which the jury could determine the correct amount of the compensation to which he was entitled.

(c) Plaintiff also testified that after the cabbage, spinach, and radishes had been marketed, he intended to plant that 20 acres in hegeri as a feed crop, but he was prevented by the flood from so doing. He testified that he "could have netted ten dollars an acre," or $200. But, as in the case of the alfalfa he intended to raise, the proper measure of damages was the rental value of the land, for the second crop was not planted.

Plaintiff contends that there is no need for evidence regarding his expenses, for the reason that the crops were matured at the time of the flood. But his own testimony is to the contrary in this regard. The defendant made proper objections at the trial and has faithfully preserved his record. Assuming that the jury found the cost of raising the alfalfa at $10 an acre, taken from defendant's testimony as to the crop on his land, the total amount of damages which the plaintiff proved is $230, including the reimbursement for breaking the ground, and the verdict of the jury, being for $1,000, we cannot say that the error was harmless. Plaintiff insists that he, being an experienced farmer, is entitled to testify as to the value of the matured crops as an expert witness. That is true, but it does not supply the evidence which he failed to produce. There is no way by which the jury could correctly compute the amount of damages as to certain of the items in question.

The only error in the record is one in the assessment of damages, and it is clear that the jury was warranted in returning a verdict in favor of the plaintiff.

The judgment is reversed, with directions to the trial court, at the option of the plaintiff, to either require a remittitur down to the sum of $230, or to grant a new trial.

OSBORN, C. J., and RILEY, WELCH, CORN, and DAVISON, JJ., concur. BAYLESS, V. C. J., and PHELPS, J., absent. GIBSON, J., not participating