## BOWLES v. BROWN.

No. 29156. May 14, 1940.

*102 P. 2d 837.*

Jno. M. Goldesberry and Gerald B. Klein, both of Tulsa, for plaintiff in error.

H. L. Smith, of Tulsa, for defendant in error.

DAVISON, J. This is an action for damages for asserted breach of an oral contract relating to lands leased for agricultural purposes. It was instituted in the court of common pleas of Tulsa county, by C. C. Brown, as plaintiff, against J. B. Bowles, as defendant. The cause was tried to a jury, resulting in a verdict and judgment for the plaintiff in the sum of $181.44.

The defendant presents the case on appeal, thus reversing the order of appearance in this court. Our continued reference to the parties will be by their trial court designation.

In 1935 and 1936, the defendant, Bowles, was the owner of a farm in Tulsa county, Okla. In August of 1935, he made a verbal agreement with the plaintiff, C. C. Brown, whereby he rented to Brown a portion of the farm consisting of about 42 acres, which it was understood would be planted to wheat. It was agreed that the duration of the tenancy would be one year, beginning September 1, 1935. The landlord, Bowles, was to furnish the seed wheat for planting the land and to have the privilege of pasturing his stock on the wheat. On the latter point, that is, the agreement with reference to pasturing the wheat, there is a conflict in the testimony produced by the respective parties. According to the proof of the plaintiff, the defendant was to have the privilege of pasturing at all "proper" times, whereas, according to the defendant, the word "proper" was not used in the negotiations or conversation by which the contract was consummated.

The defendant pastured the wheat in 1935, and the early part of 1936. The plaintiff claims he overpastured it by allowing too much stock to have access thereto, and that he also improperly permitted the stock to run on the wheat at times when, by reason of the muddy condition of the soil due to rain, such grazing was very damaging to the wheat. The plaintiff proceeded upon the theory that the asserted excessive and improper pasturing constituted a breach of contract to his detriment and damage, through injury to the wheat.

The plaintiff successfully maintained in the trial tribunal, and again asserts in this court, that the portion of the contract relating to pasturage was uncertain as to method and intensity, and that the parties are therefore deemed to have contracted with a view to pasturing the wheat in accord with the prevailing usage and custom governing such matters. In support of this position, evidence was introduced tending to show such usage and custom, and that the pasturing of the wheat as done by the defendant constituted a burden-

some and destructive departure therefrom. This theory of the plaintiff was reflected by both the pleading and the proof.

The defendant urges that the trial court erred in its rulings on the pleading and proof in not excluding from this cause all consideration of custom and usage with reference to the pasturing of wheat. This position is not well taken.

It is true that in the absence of ambiguity and uncertainty in the meaning of the terms of a contract, evidence of usage and custom is inadmissible. Bower-Venus Grain Co. v. Norman Milling & Grain Co., 86 Okla. 152, 207 P. 297; Sternwear Tire & Tube Co. of Oklahoma v. Marion Tire & Rubber Co., 88 Okla. 117, 212 P. 134; Number One Oil Co. v. Wilcox, 95 Okla. 227, 219 P. 132.

It is equally true, however, as noted by the Supreme Court of the United States in Robinson v. United States, 13 Wall. 363, 20 L. Ed. 653, that:

"Parties who contract on a subject matter concerning which known usages prevail, by implication, incorporate them into their agreements, if nothing is said to the contrary.

"The evidence in the present case did not tend to contradict the contract, but to define its meaning, in an important point, where, by its written terms, it was left undefined. This, it is settled, may be done."

(Previously cited with approval on this point in Cherokee Grain Co. v. Elk City Flour Mills Co., 78 Okla. 120, 188 P. 1067.)

We are here presented an oral contract between the owner and the tiller of land which contemplated that the land should be planted to wheat and the owner should have the privilege of pasturing the same. Regardless of whether the word "proper" was or was not used by the parties in discussing the privilege thus reserved, the contract is, nevertheless, uncertain and incomplete in itself and some guide or criterion is essential to ascertain the extent and limits of the right thus to be exercised. For, although such limits were not expressed, it is certain they existed in contemplation of the parties. It was undisputed that the primary purpose of planting the wheat was the production of grain for sale. An unlimited right of pasturage would, according to the evidence, be inconsistent with such purpose. On the other hand, a limited amount of pasturage, according to the proof, does not injure a wheat crop, but, on the contrary, may prove beneficial.

It appears that in conjunction with the pasturage of the wheat known usages and custom prevail which were ignored by the defendant to the detriment of the growing crop, resulting in damages which were determined by the verdict of the jury.

It follows that the trial court did not err in applying to this case the rule approved by us in Cherokee Grain Co. v. Elk City Flour Mills, supra. See, also, 27 R.C.L. 192; 8 R.C.L. 364; 16 R.C.L. 704.

Defendant also complains of plaintiff's pleading. He asserts that the same improperly combined in one cause of action or count two causes of action. The argument is apparently based on the theory that the acts complained of are tortious in character, and that therefore both a cause of action ex delicto and ex contractu should have been separately stated.

The essence of plaintiff's complaint is breach of contract. It is too elementary to require the citation of authority that the acts which constitute a breach of contract may sound in tort without impairing their classification as breaches of a contractual obligation.

Complaining further of plaintiff's pleading, defendant states:

"We also contend that it is elementary that a pleading must definitely state and plead clearly the measure of damages in all cases, and we further contend that the correct measure of damages was not pleaded in the amended petition herein."

The point is not well taken. In Winemiller et al. v. Lorton, 121 Okla. 99, 249 P. 406, in paragraph 1 of the syllabus, we said:

"The measure of damages is a matter of law properly to be considered and given in the instructions of the court. It is not an essential fact to be set out in the pleadings."

Defendant also complains of the trial court's instruction to the jury, asserting that the trial court inaccurately stated the measure of damages. In this connection Garrett v. Haworth, 183 Okla. 569, 83 P. 2d 822, is invoked. We therein stated:

"In McCormick on Damages, p. 486, the author states that if the invasion merely prevents the plaintiff from planting his land, the measure of damages is not the value of the hoped-for crops, but the rental value of the land for the season. He says that for a past and completed invasion causing destruction to a crop which is grown annually, the basis of compensation is the value of the unmatured crop at the time of the invasion. This value is determined by evidence of the probable yield and value of the crop, when finally harvested and marketed at maturity, less the cost of further care and cultivation, harvesting, and marketing. The rule in this state, in accord with these general principles, is that the damages for the destruction of growing crops are to be determined by the market value of such crops when matured and ready for market, less the cost of finishing the cultivation, and gathering, preparing, and transportation to market. Chicago, R. I. & P. Ry. Co. v. Johnson, supra; Castle v. Reeburgh, supra." (25 Okla. 760, 107 P. 662; 75 Okla. 22, 181 P. 297, respectively.)

See, also, Missouri, O. & G. Ry. Co. v. Brown, 41 Okla. 70, 136 P. 1117; Johnson Oil Refining Co. v. Wilcoxson, 173 Okla. 514, 49 P. 2d 108.

The court's instructions on the point do not reflect a literal adherence to the rule above outlined; however, the question of whether the variance constitutes prejudicial error is not properly presented for review. The defendant did not object and except in the manner required by law to the instruction bearing upon this phase of the case, nor did he present a requested instruction accurately stating the measure of damages. The method of excepting to instructions is governed by section 360, O. S. 1931 (12 O.S.A. § 578), which contemplates an endorsement on each objectionable instruction as therein prescribed.

While it appears in the record that the defendant orally objected to the instruction, he does not in his brief contend that the challenge thus lodged was legally sufficient to comply with the requirements of the law in this jurisdiction. It is, therefore, unnecessary for us to review the former decisions of this court dealing with and applying the foregoing section of the statute. The instructions must be viewed as though no exception had been taken. The rule applicable to the situation thus presented is stated in the second paragraph of the syllabus in Hunt Battery Mfg. Co. v. Stovall, 183 Okla. 242, 80 P. 2d 623, wherein it was held:

"Where no objection is made and no exception is taken to the instructions of the court, the parties are concluded by their failure to take exceptions, and this court will not, upon appeal, examine the same. Carter v. Bond & Bond, 174 Okla. 28, 49 P. 2d 701."

The defendant also complains of the legal sufficiency of the proof in connection with the establishment of the amount of damages.

In Garrett v. Haworth, supra, we said, in paragraph 7 of the syllabus:

"In an action for damages for injury to growing crops, the measure of damages is the value of the unmatured crops at the time of the injury. In arriving at such value, it is proper to show by evidence the probable yield under proper cultivation, and the value of such probable yield when matured, gathered, prepared, and ready for sale; also the probable cost of proper cultivation necessary to mature the crop, as well as the cost of gathering, preparation, and

transportation to market. The difference between such probable value in the market and the cost of finishing the cultivation, and gathering, preparing and transportation to market, will represent the value at the time of loss."

See, also, Johnson Oil Refining Co. v. Wilcoxson, supra; Chicago, R. I. & P. Co. v. Turner, 168 Okla. 465, 33 P. 2d 612; Chicago, R. I. & P. Ry. Co. v. Johnson, 25 Okla. 760, 107 P. 662.

An examination of the proof in this case in the light of the foregoing authorities discloses a total omission in one respect, namely, the cost of harvesting and marketing the grain. The evidence is sufficient to establish the effect of the excess and improper pasturage upon the crop, the value of probable wheat yield when harvested and marketed, but plaintiff did not offer any proof on the cost of harvesting and marketing.

It is possible that the jury as practical men took that element into consideration in conjunction with the proof, and indeed such a conclusion would not be inconsistent with the verdict, reviewed in the light of the evidence; however, no one suggests that such cost is a proper subject of judicial knowledge, and the deficiency in the proof is fatal.

The error was properly preserved for review by a motion for instructed verdict at the conclusion of the proof. The total omission of this essential element of proof, therefore, requires a reversal of the cause.

We have in the treatment of this cause deemed it appropriate to discuss and dispose of other asserted errors, in order that, in its retrial, difficulty in connection with the questions involved will be eliminated and the probabilities of a subsequent appeal will be diminished.

Reversed and remanded.

BAYLESS, C. J., WELCH, V. C. J., and RILEY, OSBORN, HURST, and DANNER, JJ., concur. CORN and GIBSON, JJ., absent.