Melissa **ELLIOTT**, Appellant,

v.

Oral Matthew **HOOKS**, Appellee.

No. 46451.

Court of Appeals of Oklahoma,
Division No. 2.

Oct. 15, 1974.

Released for Publication by Order of the
Court of Appeals Nov. 7, 1974.

William D. Graves, Scott, Groom &
Crabb, Oklahoma City, for appellant.

Eagleton, Nicholson & Pate, Oklahoma
City, for appellee.

BRIGHTMIRE, Presiding Judge.

Who ran the red light was the crucial is-
sue facing the jury below. By its verdict
it found defendant did not. Plaintiff, a
passenger in the other car, appeals saying
the judgment entered upon that verdict
should be vacated because the trial court
(1) refused to give an instruction she re-
quested regarding independent concurring
acts of joint tortfeasors, and (2) gave an
instruction on sudden emergency. We dis-
agree and affirm.

Around ten o'clock one night in April
1971 plaintiff was riding home from
church in a car with her friends, the Dar-

lings. They entered the intersection of Northeast 13th and Kelly traveling south on the latter and ran into defendant's eastbound vehicle. The wide well-lighted intersection is controlled by automatic signal lights which apparently were working properly at the time. Mrs. Darling claimed she entered the intersection on a green light and defendant swore he did.

Plaintiff, who was seated in the back seat of the Darling vehicle, was tossed upward into the ceiling when the impact occurred causing neck and back injuries which resulted in her removal to a hospital from the accident scene. Eventually she brought this suit not against her hosts but only against Hooks, driver of the eastbound car.

Prosecution of the case proceeded in routine fashion. At trial plaintiff and the Darlings swore they entered the intersection on a green light while a disinterested witness and defendant claimed the latter did. The jury returned a verdict favoring defendant and from an order rejecting plaintiff's motion to vacate a judgment entered on the verdict she appeals.

■ Her first complaint is that the court refused to give her requested instruction on the "law concerning concurrent negligence of several persons." The theory is that both defendant and the Darling car driver could have been found concurrently negligent and that the jury should have been apprised of this legal feature along with a further explanation that if they so found then defendant would be liable for the whole thing. Meyer v. Moore, Okl., 329 P.2d 676 (1958); City of Altus v. Wise, 193 Okl. 288, 143 P.2d 128 (1943); Garrett v. Haworth, 183 Okl. 569, 83 P.2d 822 (1938); and Northup v. Eakes, 72 Okl. 66, 178 P. 266 (1918), are all cited as supporting authority.

The instruction requested by plaintiff—though it could have been given without error inasmuch as it correctly describes the law of concurrent negligence of plural tortfeasors—was not necessary; indeed, in view of the instructions that were given it

is difficult to see just what help it would have been to the jury in deciding the material issues of fact involved.

Among other things, the instructions the court did give defined legal negligence, ordinary care, and proximate cause. They explained that the duties of both drivers were mutual and each had the "duty . . . as they approached the point where the collision occurred to exercise ordinary care in the management of his vehicle;" to drive at a reasonable speed, and keep a proper lookout; to obey several ordinances pleaded by plaintiff. They informed the jury that any negligence of the Darling car driver could not be charged to plaintiff, but that if such driver was found to be the only one negligent then a verdict must be for defendant. And further the instructions specified that if the jury found defendant "acted or failed to act in one or more of the ways claimed by the plaintiff" and such was legal negligence and that defendant has not "proved" a defense, then their "verdict should be for the plaintiff," otherwise not. On the whole the instructions, while perhaps not paragonian, do rather amply inform the jury defendant is liable if he was found to have contributed to the wreck by a failure to use ordinary care. A verdict for defendant was otherwise recommended as appropriate only if the jury found the Darling car driver was entirely to blame for ("sole proximate cause of" as the court put it) the mishap or that defendant acted reasonably in a "sudden emergency."

Frankly it may have been more meaningful to explain the jury's options in terms of combined or concurrent malfeasance of the two drivers, but we really cannot see any tenable basis for saying the given instructions misrepresented or even distorted the issues to unrecognizable proportions. Nor do we agree with plaintiff they misled the jury into thinking they had to find defendant entirely at fault in order for plaintiff to recover. The instructions substantially reflected the issues made up by the pleadings and if fault is to be found

with them relative to the joint tortfeasor rule, it must be laid at the doorstep of plaintiff either for not joining the driver of her host's car or for not giving some hint of the theory in her petition. Of course she did not. Both her petition and her proof were addressed principally to the allegation that the cause of the crash was defendant's running a red signal light. Obviously such circumstances made it predictable that the jury would resolve the case on the basis of which vehicle ran the red light despite the degree of instructional verbosity.

■ Moreover we are not persuaded the record contains any evidence to support a finding that defendant breached any duty other than running a red light. In suggesting otherwise plaintiff refers us to a statement defendant made about how the collision happened.

"Well," said defendant, "I was traveling down 13th, going east, and the light turned green as I was going up the hill coming up to Kelly, and I proceeded with the light. *I could see two headlights coming.*" (emphasis ours)

The italicized statement, says plaintiff, together with another that he never attempted to apply his brakes before the impact, make it "reasonable to conclude [he] could possibly have helped avoid the collision." This theory esoteric as it is, becomes even less clear in view of defendant's further testimony that when he first saw the two headlights they were "in the intersection" approaching his left side.

No excessive speed or other malfeasance on the part of defendant was mentioned by anyone.

Our review of the record leads us to believe that the jury decided the defending Tinker Air Force Base employee, who was returning home with his two young sons from a second job he held down as an office building custodian, did indeed have a green light when he entered the intersection. We think they had ample reason to.

■ The other proposition regarding the sudden emergency instruction is that the facts of the case did not justify the giving of it. As an abstract proposition we agree, primarily because we think the instruction should never be given inasmuch as the general rule requiring one to use ordinary care under the circumstances of a given situation is quite adequate to measure human conduct without invoking catchy nomenclature explaining the reason for one's denial of negligence as though it was some specific "defense," e. g., unavoidable casualty, sudden emergency. In a sense every wreck ultimately involves emergency conditions. But the Oklahoma Supreme Court has held otherwise. Weaver v. Hoster, Okl., 459 P.2d 614 (1969). And it has sanctioned recitation of the "defense" even where it decided the evidence failed to justify it. Bernardy v. O.K. Furniture & Rug Co., Okl., 385 P.2d 909 (1963).

We hold the instructions given in this case did not result in a miscarrage of justice. The judgment is affirmed.

BACON and NEPTUNE, JJ., concur.